# STATE OF MICHIGAN

# COURT OF APPEALS

In re TREECE/ALLEN, Minors.

UNPUBLISHED
March 29, 2016

No. 328684
Macomb Circuit Court
Family Division
LC Nos. 2013-000480-NA,
2013-000481-NA,
2013-000483-NA,
2013-000484-NA

Before: RONAYNE KRAUSE, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Respondent mother appeals as of right the trial court order terminating her parental rights to the minor children under MCL 712A.19b(3)(c)(i) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to parent). We affirm.

Respondent first argues that the trial court erred when it found by clear and convincing evidence that MCL 712A.19b(3)(c)(i), (g), and (j) provided statutory grounds for termination of her parental rights to the children. We disagree.

To terminate parental rights, a trial court must find that at least one statutory ground under MCL 712A.19b(3) has been met by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). A trial court's finding that a statutory ground for termination has been established is reviewed under the clearly erroneous standard. *Id.* A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

Termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(i), (g), and (j). Respondent's parental rights were terminated under the following subsections of MCL 712A.19b:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

-1-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

At the time of the adjudication, respondent had a history of housing instability, and her home was without food, furniture, or a stove. Respondent did not have money for food, despite receiving cash assistance, and she did not attend to her children's medical needs. She also had a personal history of mental health issues and domestic violence in relationships. Respondent was given a treatment plan requiring her to participate in parenting classes, a psychological evaluation, and mental health treatment, provide proof of income, obtain housing, submit drug screens, and attend visitations with her children.

By the time of the termination hearing, respondent continued to have the same issues and was still unable to provide proper care of the children. Respondent failed to demonstrate that she was committed to a drug free lifestyle. Respondent was ordered to submit drug screens beginning in March 2014. She failed to submit to any drug screens between March 2014 and February 2015, claiming she was confused about the process. Between February 2015 and June 2015 she only submitted to four of 16 Forensic Fluid drug screens. Three of these four screens were positive for marijuana. Respondent also failed to complete a substance abuse assessment, which she was required to do. Thus, respondent failed to address her substance abuse problem.

Respondent never obtained or maintained stable housing. She lived with friends and never obtained housing to which the children could be returned. Respondent had been on probation, and on February 17, 2015, respondent violated her probation. In June 2015, respondent turned herself in and was sent to jail. At the time of the termination hearing, she was living in transitional housing for persons with substance abuse problems. Respondent testified that her three youngest children could live in transitional housing with her, but stated that the two oldest children could not live there. She testified that the transitional housing program would aid her in obtaining Section 8 housing. She did not provide any evidence to support her testimony. With regard to respondent's income, respondent testified that she received approximately $720

per month in supplemental security income, but spent $20 a day on marijuana. She testified that she stopped smoking marijuana in April 2015. Therefore, respondent failed to comply with the requirement that she obtain stable housing.

There was also evidence that respondent failed to benefit from domestic violence therapy. The caseworker referred respondent to the MINDS program for domestic violence therapy in December 2014, but respondent's caseworker did not believe that respondent benefited from the program as she was pregnant at the time of the termination hearing with the child of the man who had engaged in domestic violence. The last incident of domestic violence occurred in April 2015, while respondent was still in the MINDS program. Respondent gave conflicting testimony during the termination hearing regarding whether she remained in a relationship with the man who engaged in domestic violence.

Respondent also did not visit her children on a regular basis during the pendency of this case. From December 24, 2013, until March 12, 2015, respondent was offered 63 visits, but attended only 26 of them. Since March 2015, she was offered 14 visits, but attended only approximately six visits. She missed visits for various reasons, including the weather or because she did not get out of the house on time to get to the bus. Respondent testified that she missed visits because it was too painful to attend visits and then leave her children. When the agency offered to increase respondent's visitation, she refused. During visits, she focused on her new baby rather than giving attention to all of the children. Respondent also cried at visitations when JLA or JMT would cry, and she would use profane language during visits. She would tell JLA that she would not attend the visit the next week if he continued to cry, or she would offer him a dollar to get him to stop crying. Respondent's caseworker did not believe that she benefitted from completing parenting classes because of her inconsistency with visiting the children. Therefore, respondent failed to consistently visit her children or exhibit the parenting skills she learned during her parenting classes in the visits.

Respondent also failed to adequately address and treat her mental health conditions. Respondent's mental health evaluation showed significant impairments and difficulties. She was diagnosed with bipolar disorder and schizoaffective disorder. She had issues with depression and anxiety, and she had difficulty modulating her moods. Respondent had damaged self-esteem and doubts about her adequacies as a parent. As her evaluating psychologist pointed out, bipolar disorder was a labor intensive disorder requiring medication and consistent interaction with a doctor. Respondent was not taking her psychotropic medications at the time of the termination hearing because she was pregnant. She also failed to comply with the requirement that she complete individual therapy. Respondent had not accepted her disorder, and although she had made some conceptual changes, her evaluating psychologist testified that she did not make any changes that would render her able to care for her children. Thus, the trial court properly found that respondent failed to remedy her mental health issues and that continuing services would have been unfruitful.

Termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*) since more than 182 days elapsed between the issuance of the February 27, 2014 initial disposition order and the July 21, 2015 termination decision, and the conditions that led to adjudication, namely respondent's mental health problems, respondent's failure to obtain adequate housing, and respondent's ongoing problems concerning domestic violence continued

to exist. Additionally, there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the ages of the children given that respondent failed to make substantial progress with regard to the conditions between the initial disposition and the termination of her parental rights. See MCL 712A.19b(3)(c)(*i*). Furthermore, the trial court did not err in deciding that termination was proper under MCL 712A.19b(3)(g). The facts discussed above also establish that respondent did not provide proper care or custody for the children and that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the ages of the children. See MCL 712A.19b(3)(g).

Furthermore, the children would have been at risk of harm in respondent's care given her continuing issues with drug use, domestic violence, and mental health. The evaluating psychologist testified that the oldest child, SRT, in particular, was likely to develop polarity, like respondent, if left in a chaotic environment. He also did not believe that respondent and SRT were a "good match" considering respondent's own mental health problems. Respondent had ongoing substance abuse problems, lacked adequate housing, and continued to maintain a relationship with a man who had engaged in domestic violence in spite of her domestic violence classes. Thus, the trial court did not err in deciding that termination of her parental rights was proper under MCL 712A.19b(3)(j).

Respondent next argues that the trial court erred in its determination that terminating her parental rights was in the minor children's best interests. We disagree.

A trial court's finding regarding the children's best interests is reviewed under the clearly erroneous standard. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The trial court weighs all available evidence in determining whether termination is in the best interests of the child. *In re White*, 303 Mich App at 713.

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." [*Id.* (citation omitted).]

"The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714.

The trial court properly found that termination of respondent's parental rights was in the best interests of each child. It was in the children's best interests to be raised in a drug free home environment with a stable and reliable caregiver. Respondent could not provide the children with a stable and appropriate home environment given her substance abuse, domestic violence, and mental health issues, and considering that she failed to obtain adequate permanent housing. She also displayed a lack of parenting ability during her visits with the children, and she failed to

-4-

comply with her case service plan. Respondent argues that the children were bonded to her. It is true that, at the hearing on February 5, 2015, the caseworker indicated that the agency wanted to change the permanency plan to guardianship because of the bond that respondent had with her children. However, while there was a bond between respondent and the children initially, the testimony showed that the bond had weakened because she did not visit them regularly. By the time of the termination hearing, the bond between respondent and the children was minimal. Additionally, in its opinion, the court specifically noted that there were no viable guardianship options presented.

The court considered the placements and individual needs of each child and determined that the children were thriving in their placements and that their needs were being met. As the court noted, SRT had special needs that respondent could not meet, and her needs were being met in her placement. The court also noted that JLA had significant medical needs and a vigorous schedule of doctor's appointments, and the evidence established that respondent had minimal involvement in JLA's appointments and surgeries. Thus, the trial court did not clearly err in finding that it was in all of the children's best interests to terminate respondent's parental rights. See *In re White*, 303 Mich App at 713-714.

Affirmed.

/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens