# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JERNAGIN/BARNES/MASON/BRIGHT, Minors.

UNPUBLISHED
May 25, 2017

No. 335590
Oakland Circuit Court
Family Division
LC No. 2008-747385-NA

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Respondent, S. Jernagin, appeals as of right from the trial court's order terminating her parental rights to her five youngest children pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (3)(g) (failure to provide proper care and custody), and (3)(j) (reasonable likelihood of harm). We affirm.

On appeal, respondent does not challenge the statutory grounds for termination but only asserts that the trial court erred when it found that termination of her parental rights was in the children's best interests.[1] Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013). A court may consider several factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). The court may also consider psychological evaluations, the child's age, any continued involvement in domestic violence, and the parent's history. *In re Jones,* 286 Mich App 126, 131; 777 NW2d 728 (2009). When a child is in relative placement, a trial court must "explicitly address whether termination is appropriate in light of the children's placement with relatives." *In re Olive/Metts,* 297 Mich App at 43.

We review a trial court's finding that termination of parental rights is in a child's best interests for clear error. *In re Jones,* 286 Mich App at 129. In this case, after a review of the

---

[1] "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

record, we are not left with the definite and firm conviction that the trial court erred in concluding that a preponderance of the evidence demonstrated that termination of respondent's parental rights was in the children's best interests.

The psychologist who examined respondent concluded that she exhibited symptoms consistent with psychosis. This psychologist further opined that unless respondent complied with mental health services to address her symptoms, it was unlikely that she could maintain stability in her life on a personal level, as well as with regard to housing and employment. During the nearly three years that the children were in care, respondent failed to consistently attend her therapy, and there was evidence that she was not taking prescribed medication. Because respondent's behavior continued to be described as erratic, there was evidence to support a finding that at the time of termination, her mental health issues still impeded her ability to properly parent her children.

The evidence also supported the trial court's finding that despite being offered services, respondent's parenting skills had not improved. Although respondent did complete a parenting class, there was evidence to suggest that she did not benefit from the class. Foster care workers testified that her parenting time with the three middle children was chaotic. Respondent was unable to control her children and redirect inappropriate behavior, and, at times, she contributed to increasing the frenzy. Respondent's visits with her three middle children were suspended in December of 2015. Her visits with the other children remained supervised by the agency because respondent engaged in a verbal altercation with a relative caregiver in the children's presence. At the end of nearly three years, respondent still had not demonstrated that she could spend unsupervised time with her children, let alone that she could adequately care for them if returned to her custody.

Four of the five children had special medical and educational needs. The children's foster care supervisor testified that these needs would require a parent to demonstrate consistency and the ability to cooperate with others. The trial court specifically found that respondent lacked the capacity to coordinate all the various needs of the children. This conclusion is supported by the evidence. Several foster care workers testified that because respondent had not addressed her mental health issues, she could not maintain the communication and healthy relationships necessary to ensure that the children's special educational and medical needs were met.

A court may also consider the advantages of a foster home and the possibility of adoption over the parent's home. *In re Olive/Metts*, 297 Mich App at 41-42. A court appointed special advocate testified that at the time the children came into care, they fought a lot with each other, did not know how to use a fork and knife, were unfamiliar with basic hygiene, and were not affectionate. After being placed in their respective foster homes, their behaviors improved. That there existed a correlation between the placement and the children's behavior is further highlighted by the special advocate's testimony that the children's behavior digressed after visits with respondent and that their behavior improved after parenting time was suspended. The children clearly benefitted from the structure and boundaries created in the more stable environments. Moreover, there was testimony from foster care workers and a psychologist that the children liked their placements and expressed an interest in remaining in these homes. Thus, it is clearly apparent that the children were placed in stable homes where they were progressing

and that this progress could continue as the foster parents had all indicated a desire to adopt the children in their care.

Respondent also asserts that the trial court failed to address WB's interests individually. This argument is without merit. A trial court is only required to address differences between siblings' interests if those interests "*significantly differ.*" *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014). In this case, although WB was the youngest child, her best interests did not *significantly differ* from those of her siblings. All of the children were relatively young at the time of the termination hearing. All were equally impacted by respondent's deficient parenting skills and unstable mental health. WB's need for permanency and finality was just as great as the needs of her siblings. Additionally, to the extent that WB's interests did differ from those of her siblings, the record discloses that the trial court addressed those differences. As the court noted, WB was four years old at the time of termination. She had been in care for three of those four years, and respondent had not parented WB for most of the child's life. The court recognized that WB was living with her aunt and doing well in relative placement. Thus, contrary to respondent's assertions, the trial court specifically addressed WB's interests.

Finally, respondent asserts that when determining the best interests of the children, the trial court failed to consider that D'JD and WB were placed with relatives. Although placement with a relative weighs against termination, and the fact that a child is living with relatives must be considered, placement with relatives is not dispositive, and a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43. The lower court explicitly acknowledged that D'JD and WB were currently placed with relatives. Nonetheless, it determined that termination of respondent's parental rights was in these two children's best interests. The trial court found that the relationship between respondent and the relative caregivers had deteriorated to the point that the individuals could no longer cooperate in a meaningful way. Implementing a guardianship with the relative caregivers in lieu of terminating respondent's rights was simply not a viable option in light of her hostility toward the caregivers.

The trial court did not clearly err when it held that termination of respondent's parental rights was in the children's best interests.

Affirmed.


/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro