*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILSON, Minors.

UNPUBLISHED
March 10, 2022

No. 358397
Macomb Circuit Court
Juvenile Division
LC Nos. 2018-000367-NA
          2018-000368-NA
          2020-000063-NA

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her minor children, KAW, MLW, and KMW, under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(g), and MCL 712A.19b(j).[1]  For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Petitioner, the Department of Health and Human Services, filed a petition seeking to remove KAW and MLW from respondent's care and requesting temporary jurisdiction.  Petitioner alleged that there were issues with domestic violence in front of the children, alcohol use, cocaine and marijuana use, and inappropriate housing.  Respondent pleaded no contest to the allegations in the petition.  Respondent was offered services aimed at reunifying her with the children, including random drug screens, domestic-violence classes, parenting classes, a psychological evaluation, individual therapy, and supervised parenting time.  When KMW was born, the court authorized a petition to remove him from respondent's care, and subsequently entered an order taking jurisdiction over him in March 2020.

In January 2021, petitioner filed a supplemental petition seeking termination of respondent's parental rights to all three children.  Petitioner alleged that there continued to be issues with domestic violence, substance abuse, housing, and income.  Additionally, petitioner

---

[1] Prior to his death, the children's father was a respondent in these proceedings.

alleged that respondent had failed to comply with the treatment plan and therapy. The court rejected the petition, however. Respondent continued services, but, as before, was inconsistent with them. She also cancelled visits with the children the day of the visit, and she continued to miss drug screens. In June 2021, petitioner filed a second supplemental petition seeking termination of respondent's parental rights, alleging unsuitable housing, unstable income, noncompliance with the treatment plan and drug screens, and noncompliance with individual therapy. The trial court authorized the petition. Thereafter, respondent stipulated that there were statutory grounds to terminate her parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), but she requested a best-interests hearing.

At the best interests hearing, the foster care worker testified that the initial reason for the removal petition in 2018 was for domestic violence and unstable housing, and the drug screens were ordered because of respondent's possible marijuana use. The foster care worker testified that respondent lived between her mother's and father's homes. Respondent completed only 20 of the 94 total ordered screens. She also did not consistently attend her individual therapy. The children's foster mother testified that she felt a bond "on every level" with the children and would love to adopt them, noting they began to call her and their foster father "mom" and "dad" after only a month.

Respondent testified that she had tried her best to comply with her treatment plan. She explained the reason for her inability to find independent housing was her low credit score and lack of assistance. Respondent noted she was trying to get an apartment after saving up some money, but explained if the apartment falls through she will most likely live with her mother or father. Respondent was still engaging with her individual therapy and was back on her antidepressants. She admitted there was inconsistency with her drug screens. She attributed that to her difficulty in getting rides to the testing site. She stated that, in the future, it would not be a problem because her father had bought her a car, and, if she needed to, she would call an Uber. Respondent also noted she had a car at the maternal grandmother's house, but was only allowed to use it for situations involving the children. Yet, she also testified that another reason for missing drug screens was because she would get back together with respondent-father and that, while with him, she "wanted to be with him and not do what was best" for the children. With regard to her substance abuse issue, respondent admitted she had a problem with marijuana in the past, but stated that she had quit. She then testified that she had previously quit and then restarted smoking marijuana. Finally, respondent asserted she had learned from her domestic violence counseling in 2019, but acknowledged she was arrested as a result of two separate fights since then. The record reflects that she was convicted of misdemeanor domestic violence against the maternal grandmother in June 2019, and in December 2020, she was convicted of a misdemeanor assault and battery.

Following the hearing, the trial court found by a preponderance of the evidence that termination of respondent's parental rights to the children was in the children's best interests. Therefore, the court entered an order terminating respondent's parental rights.

## II. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. We review for clear error a trial court's determination regarding best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

### B. ANALYSIS

In determining the best interests of the child, the trial court should consider:

[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich at 713-714 (quotation marks and citations omitted).]

Respondent first contends that drug screens should not have been part of her treatment plan because the removal was due to domestic violence and a lack of housing. However, the petition alleged that one of the children tested positive for THC at birth. Moreover, there were allegations of drug use. Respondent pleaded no contest to the allegations in the petition. Therefore, drug screens were properly part of respondent's treatment plan. She did not comply with it. Her reasons for noncompliance were related to her inability to get transportation. However, at the best-interests hearing, she admitted that at times she did not screen because she wanted to be with respondent-father instead of prioritizing the children. She also noted that she had a vehicle at the maternal grandmother's house that she was allowed to use for tasks related to the children. Additionally, respondent testified that she could call an Uber to get to her drug screens in the future. In doing so, she noted that she uses an Uber to get to and from work. In light of the above, the record supports an inference that the reason she did not attend the drug screens was because she did not want to, not because she was incapable of doing so.[2] The court, therefore, did not err by considering respondent's lack of compliance with her substance-abuse screenings.

---

[2] Respondent notes that marijuana is now legal. However, at the time the petition was initiated the use of marijuana was not legal in Michigan. Subsequently, as the case progressed, respondent was convicted of assault and battery. As part of her sentence in that case, she was required to submit to drug screens. Finally, we note that the mere fact that marijuana is legal does not mean that it may never be considered a factor in a child protective proceeding. Instead, it may be considered when the parent's use of it negatively impacts the children involved. In fact, MCL 333.27955(3) expressly provides that: "A person shall not be denied custody of or visitation with a minor for conduct that is permitted by this act, *unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated*." (Emphasis

Respondent also contends that, although she was unable to obtain independent housing, she has access to three homes in which she could live with her children. However, the trial court was correct when it determined none of these homes were appropriate. First, the maternal grandmother's home is not an option because of her strained relationship with respondent, and her habit of requesting alternative placement of the children when she fights with respondent. Furthermore, respondent has engaged in domestic violence against the maternal grandmother, and there is a possibility she may do so again, creating a dangerous and toxic environment for her children.[3] Second, respondent's father's home is not an appropriate placement. Indeed, respondent testified that her father's physical problems made having the children living with them improper. Finally, there is no indication respondent's stepfather offered to open his home to the children, nor was he raised as a possible housing alternative at the best interests hearing. As a result, the court did not err by finding that housing continued to be a problem.

Next, respondent suggests that the children should have been placed in a guardianship as opposed to having her parental rights terminated. However, the only potential guardians were the current foster parents and the maternal grandmother. The current foster parents, however, stated that they were not interested in participating in a guardianship. Further, the case worker testified that a guardianship with the maternal grandmother would not be in the children's best interests based on the maternal grandmother's history of requesting removal of the children from her care due to altercations between her and respondent. In particular, the record reflects that the children were initially placed with the maternal grandmother, but, after an argument with respondent, the grandmother requested their removal. Although the incident was resolved before the children were removed, respondent was then convicted of misdemeanor domestic violence against the maternal grandmother. The maternal grandmother put in her 30-day notice requesting removal of the children because of her inability to get along with respondent. The children were subsequently moved to a licensed foster home in early September 2019, but were then returned to their maternal grandmother's care in late October 2019. In 2020, the maternal grandmother once again submitted another 30-day alternative placement request, and the children were moved to nonrelative foster homes in September 2020. Given that history, guardianship with the maternal grandmother is not in the children's best interests. The children were already removed, replaced, and removed again from the maternal grandmother's care. Their need for permanency and stability cannot be satisfied with a guardianship under their maternal grandmother's care.[4]

---

added). Here, evidence in the record indicated that the minor child was born with THC in its system and that respondent's continued marijuana use posed an unreasonable risk to the minor children.

[3] On appeal, respondent speculates that her arguments with the maternal grandmother could have been because she was not taking her medication during her pregnancy with one of the children. There is nothing in the record to support that assertion.

[4] Respondent suggests on appeal that petitioner failed to consider guardianship because of the children's ages. In support, she cites to *In re Affleck/Kutzleb/Simpson*, 505 Mich 858 (2019), where our Supreme Court determined a "generalized policy" against recommending guardianship for children under 10 years old was improper. There was no such generalized policy here. While

In its best-interests findings, the trial court acknowledged respondent had a bond with her children, but noted it was weakened because of her decreased parenting time, which was the result of respondent's failure to comply with her treatment plan and missed visitation toward the end of the case. The court also considered the children's need for permanency, noting that the children had been bounced in and out of their grandmother's home and to different foster families before they had finally found permanency with their current foster parents, who wish to adopt. The trial court considered respondent's history of domestic violence, the most recent of which occurred after she completed her classes on domestic violence under her treatment plan. The court also considered respondent's recurring failure to maintain her independent therapy sessions. Overall, despite nearly three years to comply with the basic requirements of her treatment plan, respondent was unable to make any progress. In light of the foregoing, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

the children's ages were a factor in the consideration, the foster care worker noted the reasoning behind not pursuing guardianship was because the guardian options were either unwilling or improper.