*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I. J. TURNER, Minor.

UNPUBLISHED
May 12, 2022

No. 358886
St. Clair Circuit Court
Family Division
LC No. 19-000073-NA

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. STATUTORY GROUNDS

Respondent argues that the trial court erred by finding there were statutory grounds to terminate his parental rights. We disagree.

This Court reviews for clear error a trial court's finding whether a statutory ground for termination has been proven by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake was made. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

A trial court must terminate a parent's parental rights if it finds that a statutory ground under MCL 712A.19b(3) has been established by clear and convincing evidence and that termination is in the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Regarding § 19b(3)(c)(*i*), there is no dispute that more than 182 days had passed since the court entered the initial dispositional order. Thus, the only question is whether clear and convincing evidence showed the conditions that led to adjudication continued to exist and that there was no reasonable likelihood the conditions would be rectified within a reasonable time considering the child's age. The condition that led to the adjudication was respondent's assaultive behavior, which posed a risk to the child. The supplemental petition listed as examples two incidents of assault: an incident in 2013 when respondent assaulted the mother of respondent's other child in the child's presence, and an incident in 2011 when respondent was adjudicated for felony assault with a dangerous weapon. Notably, as part of respondent's parent-agency treatment plan, he was required to participate in and benefit from a course related to domestic violence. It is undisputed that respondent never participated in such a service. Although he claimed he was not aware that he was required to take such a class, the record belies this assertion. At the November 4, 2019 review hearing, respondent stated that he was "having a hard time" getting into the domestic-violence course without a court order. To assist, the court specifically added to the continuing orders that respondent was to participate in, among other things, domestic-violence counseling. The court reminded respondent that after his release from jail, he would have to complete all of the services that he was unable to do while incarcerated. Thus, it is clear that respondent was aware that he needed to participate in a domestic-violence class and even took the initiative to request a court order to facilitate his participation. Despite knowing this requirement, respondent never participated in any domestic-violence class. As a result, without this counseling or class, the evidence suggests that the condition that led to adjudication—respondent's assaultive behavior—was unaddressed and remained an issue.

In further support that assaultive behavior still was a concern, respondent was involved in an incident of domestic violence during the pendency of this case. Given respondent's failure to address his propensity for domestic violence or assaultive behavior, the trial court did not clearly

err by finding the conditions that led to the adjudication continued to exist and would not be rectified within a reasonable period of time considering the child's age. Accordingly, the trial court did not clearly err by finding that § 19b(3)(c)(*i*) was proven by clear and convincing evidence.

The trial court also did not clearly err by finding that termination under § 19b(3)(g) was proven by clear and convincing evidence. As already discussed, the evidence showed respondent did not participate in and benefit from the service plan. He was required to complete domestic-violence classes, but he never did. And although respondent did participate in anger-management classes, the foster-care supervisor testified that respondent still exhibited aggressive behavior toward the various foster-care workers. Additionally, respondent did not participate in the Michigan Rehabilitations Services program that was recommended to him after his psychological evaluation.[1] "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. Thus, we are not left with a definite and firm conviction that the trial court made a mistake with regard to § 19b(3)(g).

And with regard to § 19b(3)(j), termination is proper if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711. Again, there was ample evidence that respondent failed to comply with the terms and conditions of his service plan. Respondent's failure to comply with the service plan therefore supported the trial court's decision to terminate on this ground.

## II. BEST INTERESTS

Respondent argues that the trial court clearly erred by determining that termination of his parental rights was in the child's best interests. We disagree. This Court reviews a trial court's best-interest determination for clear error. *In re Olive/Metts*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012) (citation omitted).

Once a trial court has found there are statutory grounds to terminate parental rights under MCL 712A.19b(3), the court must terminate the parent's parental rights if it is in the child's best interests. *In re White*, 303 Mich App at 713. In making this best-interest determination, "the court may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App at 83.

In making its finding that termination was in the child's best interests, the trial court focused on the lack of a bond between respondent and the child, and the child's need for permanency, stability, and finality. The court did not clearly err. At no point in the child's life

---

[1] Although the psychologist *recommended* this service, a separate court order *required* respondent to follow up on any recommendations.

had he been placed with respondent for care. Indeed, during the period that this case was pending, which was more than two years, respondent had a total of 30 face-to-face visits with the child. It is not unreasonable to conclude that with such limited physical contact or presence, there would be little bond. Further, although respondent also had 25 virtual or remote visits, the court discounted that as a means of establishing a bond with a very young child. We are not left with a definite and firm conviction that the trial court made a mistake. Certainly, there is a difference between physically being with and interacting with an infant or toddler as opposed to merely interacting with him remotely through a screen. Of note, respondent does not really dispute that there was little bond between him and the child. Instead, he offers reasons or explanations for why no bond exists. But the reasons are immaterial because the focus in a best-interest analysis is on the child, not the parent. *In re Moss*, 301 Mich App at 87. Thus, the reasons *why* a child lacks a bond to a parent are immaterial to the child; what matters is that there is no bond.

We also note that there was evidence the child was thriving in the foster home and the foster parents were willing to adopt. There was nothing to suggest that respondent could provide a similar thriving environment for the child and the prospect of adoption would provide the permanency and stability that the child needs. On the contrary, in the six months leading up to the termination hearing, respondent was in danger of being evicted twice for failure to pay rent. These are factors that further weigh in favor of termination being in the child's best interests. See *In re Olive/Metts*, 297 Mich App at 42. Accordingly, the trial court did not clearly err by finding that a preponderance of the evidence showed that termination of respondent's parental rights was in the best interests of the child.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan