*In re* WHITE

Docket No. 316749. Submitted January 10, 2014, at Lansing. Decided
January 16, 2014, at 9:00 a.m.

The Department of Human Services petitioned the Bay Circuit
Court, Family Division, for protective custody over L. Rinnert's
three daughters. After Rinnert admitted that her husband had
kicked the oldest daughter, that she had lived in at least 20
different places in 9 years, and that she made poor relationship
decisions, including involvement with a sex offender who had
attempted third-degree criminal sexual conduct against a minor,
the court, Karen A. Tighe, J., took jurisdiction over the children.
Rinnert actively participated in services and interacted well with
the children during parenting time, but the children did well in
foster care. During a supervised parenting visit at Rinnert's
apartment, a man whom Rinnert had met through Facebook
arrived with beer. Another man whom Rinnert had met on the
Internet and was dating was staying with her. In addition, Rin-
nert's uncle stayed at her apartment occasionally. The court
eventually authorized a petition to terminate Rinnert's parental
rights. Following a hearing, the court concluded that clear and
convincing evidence supported terminating Rinnert's parental
rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). The court found
that despite Rinnert's participation in services, the conditions that
led to the adjudication had not sufficiently changed, that she
continued to exhibit poor judgment and allow men she knew very
little about to stay in her home, that she had not demonstrated
that she could provide a safe and healthy environment for her
children, and that she would not be able to rectify this condition
within a reasonable time because she continued to engage in the
same behavior after two years. The court found that Rinnert was
unable to provide proper care and custody for the children and that
there was a reasonable likelihood the children would be harmed if
returned to her home. With regard to the children's best interests,
the trial court found that the children were strongly bonded to
Rinnert. Because the oldest child had physical and mental handi-
caps and the younger children had attention deficit and bipolar
disorders, the court found that they required stability, full-time
attention, and a safe home. The court found that Rinnert contin-

ued to surround herself with people of questionable character and that the children were the most stable in foster care. The foster family was willing to keep the children safe until adoption, and the court found that the children were developing in a healthy and safe manner. Accordingly, the court ordered Rinnert's parental rights terminated, and she appealed.

The Court of Appeals *held*:

1. MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's rights if the conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. This statutory ground applies when the conditions that brought the children into foster care continue to exist despite the parent's having time to make changes and the opportunity to take advantage of a variety of services. MCL 712A.19b(3)(g) provides that the trial court may terminate a parent's rights if he or she, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. The parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide proper care and custody. MCL 712A.19b(3)(j) provides that the trial court may terminate parental rights if there is a reasonable likelihood from the parent's conduct or capacity that the child will be harmed if returned to the parent's home. A parent's failure to comply with the terms and conditions of the service plan is also evidence that the child will be harmed if returned to the parent's home.

2. The trial court did not clearly err when it found that the evidence supported terminating Rinnert's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). Rinnert made significant progress with the parenting aspects of her service plan, but her deficient parenting abilities were not the only conduct that brought her children into care. She made poor relationships decisions, such as exposing her daughters to a sex offender and inviting a man with a criminal history into her home. Her psychological evaluation indicated that she was emotionally immature and likely to engage in relationships with exploitive men. Although the court had instructed Rinnert several times to stop bringing new men home, she proved unwilling or unable to do so. Besides the parenting-time incident and her allowing an uncle to stay with her at the time of the termination hearing, Rinnert continued to invite men into her home during the two-year

pendency of this case. Rinnert's oldest daughter was particularly vulnerable to abuse and harm because of her autism, and Rinnert's willingness to expose her children to exploitive individuals put them at a risk of harm.

3. Under MCL 712A.19b(5), the trial court must order the parent's rights terminated if the petitioner established a statutory ground for termination by clear and convincing evidence and the court finds from a preponderance of the evidence on the whole record that termination is in the children's best interests. The trial court should weigh all the evidence available to determine the children's best interests. The court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption.

4. The trial court did not clearly err when it found that terminating Rinnert's parental rights was in the children's best interests. While the trial court found that the children and Rinnert shared a bond, the strength of the bond was only one factor among many that the court considered. It also found that Rinnert had a history of failing to comply with her case service plan by inviting strange men into her home, that the children were doing well in foster care, that there was a possibility that the children would be adopted, and that the children strongly needed permanence and stability. The trial court gave strong weight to the children's need for safety and stability.

5. The trial court did not clearly err by failing to distinguish individual children's best interests. The court has a duty to decide the best interests of each child individually, and if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control. If the best interests of the individual children significantly differ, the trial court should address those differences when making its determination of the children's best interests. The court is not, however, required to explicitly make individual and often redundant factual findings concerning each child's best interests. The trial court found that all the children shared a strong bond with Rinnert. Multiple witnesses testified that the children loved Rinnert, were bonded with her, and wanted to return to her home. The oldest daughter found it traumatic to be separated from anyone significant in her life, including her mother, sisters, or the foster family. The trial court did not clearly err by

failing to find that the oldest daughter shared a particular, stronger bond with Rinnert than the younger children. Additionally, the court distinguished between the children when their needs differed in significant ways, such as when it considered the children's individual and different special needs.

Affirmed.

1. TERMINATION OF PARENTAL RIGHTS — BEST INTERESTS OF THE CHILD — FACTORS TO CONSIDER.

The trial court must order a person's parental rights terminated if the petitioner establishes a statutory ground for termination by clear and convincing evidence and the court finds from a preponderance of the evidence on the whole record that termination is in the child's best interests; the court should weigh all the evidence available; the court should consider a wide variety of factors, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home; the court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption (MCL 712A.19b(3) and(5)).

2. TERMINATION OF PARENTAL RIGHTS — BEST INTERESTS OF THE CHILD — INDIVIDUAL DETERMINATIONS FOR EACH CHILD.

A trial court determining whether to terminate parental rights has a duty to decide the best interests of each child individually, and if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control; if the best interests of the individual children significantly differ, the court should address those differences when making its determination of the children's best interests; the court is not, however, required to explicitly make individual factual findings concerning each child's best interests (MCL 712A.19b(5)).

*Kurt C. Asbury*, Prosecuting Attorney, and *Sylvia L. Linton*, Assistant Prosecuting Attorney, for the Department of Human Services.

*James A. Perry* for L. Rinnert.

Before: WHITBECK, P.J., and FITZGERALD and O'CONNELL, JJ.

PER CURIAM. Respondent-appellant, L. Rinnert, appeals as of right the trial court's order terminating her parental rights to her three minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court also terminated the parental rights of the children's father, J. White, who is not a party to this appeal. Because Rinnert failed to demonstrate that she could provide a safe and stable environment for her children, we affirm.

## I. FACTS

### A. BACKGROUND FACTS

Children's Protective Services received multiple referrals concerning Rinnert's care of her three daughters beginning in 2002. Rinnert's oldest daughter is autistic, and the younger daughters suffer from attention deficit and bipolar disorders. Rinnert is physically disabled.

In 2011, the Department of Human Services (the Department) petitioned the trial court for protective custody over the children. In response to the petition, Rinnert admitted that her husband at the time had kicked the oldest daughter in 2010. Rinnert admitted that she had lived in at least 20 different places in 9 years. Rinnert admitted that she makes poor relationship decisions, including being involved with J. Harris, a sex offender who had attempted third-degree criminal sexual conduct against a person between the ages of 13 and 15. On these bases, the trial court took jurisdiction over the children.

### B. RINNERT'S PROGRESS WITH SERVICES

Rinnert's psychological evaluation reported that Rinnert was emotionally immature and was unable to make the psychological transition to adulthood because of abuse that she had suffered at the hands of her

biological and adoptive families. The evaluation noted that Rinnert was likely to "routinely seek out relationships in which she is exploited" and "attracts individuals willing to exploit her[.]" The evaluation stated that Rinnert did not understand that associating with such individuals places her children at a risk of harm.

At a review hearing on May 7, 2012, Jessica Duvall, the children's caseworker, reported that Rinnert actively participated in services. Duvall reported that Rinnert interacted very well with the children during parenting time. Duvall also reported that the children were doing well in foster care.

At a hearing on July 30, 2012, Duvall reported that a strange man arrived with a six-pack of beer during a supervised parenting visit at Rinnert's apartment. Rinnert admitted that the man was someone she had met through Facebook. Rinnert asked the man to leave, and eventually the police were called. In a letter, Amy Anderson, Rinnert's therapist, reported that Rinnert had been given permission to hold a birthday party for the oldest daughter at a state park as long as she did not do any grilling and did not invite guests. Rinnert brought four guests and grilling equipment to the park. The trial court agreed that Rinnert had demonstrated progress, but instructed Rinnert to "stay away from men" and close her Facebook account.

At a hearing on October 19, 2012, Ned Heath, a Department employee, reported that a man, B. Johnson, was staying with Rinnert. Rinnert stated that Johnson was her cousin. Heath testified that he found Johnson shirtless in Rinnert's apartment when he arrived for a check-in and that Rinnert had a picture of Johnson lying on her bed shirtless. White testified that Rinnert's birth mother had informed him that Rinnert and Johnson met on the Internet and were dating.

The trial court informed Rinnert that if it did not see progress with Rinnert's issue of finding strange men on the Internet and allowing them to come into the house to spend the night, it would not be safe to return the children to Rinnert's care.

The children originally came into care with head lice. Heath also reported that head lice continued to be a concern because the children had lice again after visiting Rinnert. The trial court instructed Rinnert to take care of the lice issue.

At the January 6, 2013 hearing, Heath reported that Rinnert and Johnson were still seeing each other at the home of a mutual friend. Heath reported that when Rinnert did not have the children, she was staying at a friend's house where Johnson was also staying. The trial court authorized the prosecutor to petition to terminate Rinnert's parental rights.

### C. TERMINATION HEARING

At the termination hearing, Lisa Del Valle, Rinnert's therapist, testified that Rinnert had strongly progressed toward building self-esteem and being assertive. Ann Arnold, Rinnert's parenting educator, testified that Rinnert had done very well at setting boundaries for her children. Rebecca Mouch, Rinnert's women's support group counselor, testified that Rinnert had made "tremendous" progress at understanding boundaries.

Lindsay Craves, the oldest child's therapist, testified that she requires a high degree of special care because of her autism. Craves testified that Rinnert would have to be very careful about the people she brought near the oldest child because of her vulnerability. Craves testified that she worried about Rinnert's decisions as they related to keeping the oldest child safe.

Johnson testified that he and Rinnert met on an Internet dating website and discovered that they were distantly related through Rinnert's birth mother. Rinnert testified that her birth mother had found Johnson on the dating website and suggested that Rinnert invite him to Michigan to assist around Rinnert's home. Rinnert testified that she knew that Johnson had a criminal background when she invited him to Michigan, but she wanted to "give him a chance."

Johnson testified that he moved to Rinnert's home from Texas and lived there for a month, but they did not have a sexual relationship. Rinnert testified that Johnson never lived with her. Johnson confirmed that he saw Rinnert on several occasions after leaving her home.

Rinnert denied that she had ever had a relationship with Harris, despite having admitted it at the preliminary hearing. Rinnert also testified that an uncle was occasionally staying at her apartment. Heath testified that he was unsure whether Rinnert had benefitted from services.

### D. THE TRIAL COURT'S FINDINGS AND CONCLUSIONS

The trial court concluded that clear and convincing evidence supported terminating Rinnert's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). It found that, despite Rinnert's participation in services, the conditions that led to the adjudication had not sufficiently changed. The trial court found that Rinnert continued to exhibit poor judgment, allow men that she knew very little about to stay in her home, and "meet, greet, and entertain dangerous companions." The trial court found that Rinnert had not demonstrated that she could provide a safe and healthy environment for her children. The trial court found that Rinnert would

not be able to rectify this condition within a reasonable time because after two years she continued to engage in the same behavior. The trial court found that Rinnert was unable to provide proper care and custody for the children and that there was a reasonable likelihood that the children would be harmed if returned to Rinnert's home.

Considering the children's best interests, the trial court found that the children were strongly bonded to Rinnert. The trial court found that the children have special needs: the oldest child has physical and mental handicaps, and the younger two children have attention deficit and bipolar disorders. The trial court found that because of these needs, the children "require stability and full-time attention" and a safe and stable home.

The trial court found that Rinnert had continued to "surround herself with people of questionable character." It found that the children were the most stable in foster care, where they had lived for the longest single period in their lives. The trial court noted that the foster family was willing to keep the children safe until adoption. The trial court found that the children were developing in a healthy and safe manner.

The trial court ordered Rinnert's parental rights terminated.

## II. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination.[1] The trial court's factual findings are clearly erroneous if the evidence

---

[1] MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

supports them, but we are definitely and firmly convinced that it made a mistake.[2]

## B. LEGAL STANDARDS

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's rights if

> [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

This statutory ground exists when the conditions that brought the children into foster care continue to exist despite "time to make changes and the opportunity to take advantage of a variety of services . . . ."[3]

MCL 712A.19b(3)(g) provides that the trial court may terminate a parent's rights if

> [t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody.[4]

MCL 712A.19b(3)(j) provides that the trial court may terminate parental rights if

> [t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

---

[2] *Mason*, 486 Mich at 152.

[3] See *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

[4] *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003); *In re Trejo Minors*, 462 Mich 341, 358-360; 612 NW2d 407 (2000).

Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home.[5]

### C. APPLYING THE STANDARDS

Rinnert contends that the trial court clearly erred by finding that clear and convincing evidence supported the statutory grounds because she participated in and benefitted from services. We disagree.

We recognize that a variety of witnesses testified that Rinnert had made significant progress with the parenting aspect of her service plan. However, Rinnert's formerly deficient parenting abilities were not the only conduct that brought Rinnert's children into care. At the preliminary hearing, Rinnert admitted that she made poor relationships decisions, such as exposing her young daughters to a sex offender who had attempted to molest a child.

Rinnert's psychological evaluation indicated that Rinnert was emotionally immature and likely to engage in relationships with exploitive men who would put her children at a risk of harm. The trial court instructed Rinnert several times throughout the pendency of this case to stop bringing new men into her home. Rinnert proved unwilling or unable to do so.

Rinnert asserts that she denied having a sexual relationship with Johnson. Rinnert also denied allowing Johnson to live in her home. We defer to the special ability of the trial court to judge the credibility of witnesses.[6] The trial court found that Rinnert invited Johnson into her home. Johnson testified that Rinnert

---

[5] MCL 712A.19a(5); see also *Trejo*, 462 Mich at 360-363.

[6] MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

invited him into her home after they met on a dating website. Heath testified that he found Johnson in Rinnert's home on a Sunday morning wearing no shirt. The trial court's finding was not clearly erroneous.

Rinnert's assertion also misses the point. Whether Rinnert engaged in a sexual relationship with Johnson does not negate that she invited Johnson, whom she knew had a criminal history, into her home. Rinnert previously admitted exposing her children to a sex offender. After the children were removed from her care, a man that she met on Facebook arrived at parenting time with alcoholic beverages. At the time of the termination hearing, Rinnert was allowing an uncle to stay with her. During the two-year pendency of this case, Rinnert continued to invite men into her home. One of these men had a criminal background; the other left only after the police were called. Accordingly, we are not definitely and firmly convinced that the trial court made a mistake when it found that the evidence supported terminating Rinnert's parental rights under MCL 712A.19b(3)(c)(*i*).

Similarly, we are not definitely and firmly convinced that the trial court made a mistake when it found that clear and convincing evidence supported that (1) Rinnert could not provide her children with proper care and custody and (2) the children were likely to be harmed if returned to Rinnert's care. Rinnert had a history of inviting men with criminal backgrounds into her home. Rinnert continued to invite men into her home throughout the pendency of the case, demonstrating that she did not benefit from her service plan. Craves testified that Rinnert's oldest daughter was particularly vulnerable to abuse and harm because of her autism. Rinnert's psychological evaluation indicated that Rinnert's willingness to expose her children

to exploitive individuals put them at a risk of harm. Given Rinnert's failure to benefit from her service plan and the likelihood that her behavior would put her children at a risk of harm, we conclude that the trial court did not clearly err when it found that the evidence supported terminating her parental rights under MCL 712A.19b(3)(g) and (j).

### III. THE CHILDREN'S BEST INTERESTS

#### A. STANDARD OF REVIEW

The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests.[7] We review for clear error the trial court's determination regarding the children's best interests.[8]

#### B. LEGAL STANDARDS

The trial court should weigh all the evidence available to determine the children's best interests.[9] To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home."[10]

---

[7] MCL 712A.19b(5); *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012); *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

[8] MCR 3.977(K); *Trejo*, 462 Mich at 356-357.

[9] See *Trejo*, 462 Mich at 356-357.

[10] *Olive/Metts*, 297 Mich App at 41-42 (citations omitted).

The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption.[11]

### C. APPLYING THE STANDARDS

Rinnert asserts that the trial court clearly erred when it found that termination was in the children's best interests because she and the children shared a strong bond. We disagree.

The strength of the children's bond was only one factor among many that the trial court considered. The trial court found that the children and Rinnert shared a bond. However, it also found that Rinnert had a history of failing to comply with her case service plan by inviting strange men into her home. It found that that the children were doing very well in foster care. It found that there was a possibility that the children would be adopted. And it found that the children strongly needed permanence and stability. The trial court gave strong weight to the children's need for safety and stability. Considering the record in this case, we are not definitely and firmly convinced that the trial court made a mistake when it found that terminating Rinnert's parental rights was in the children's best interests.

Rinnert also asserts that the trial court erred by failing to consider the needs of each child individually because it failed to address the oldest child's special bond with Rinnert. We disagree.

---

[11] See *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001); *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004); *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009).

In *In re Olive/Metts Minors*, this Court held that the trial court "has a duty to decide the best interests of each child individually."[12] The Court relied on *Foskett v Foskett*, a custody case that held that "if keeping the children together is contrary to the best interests of an *individual* child, the best interests of *that* child will control."[13] The Court also relied on *In re HRC*, in which the Court noted that the trial court on remand should "make findings as to each child's best interests before deciding whether termination of respondents' parental rights is warranted."[14]

In *Olive/Metts*, the trial court clearly erred by failing to consider the individual best interests of the children because it failed to address that some of the children were placed with relatives and others were not.[15] Notably, the Court held that the trial court clearly erred by failing to distinguish between two *groups* of children— the younger children, who were placed with relatives, and the older children, who were not.[16] The younger children's placement with relatives was a significant basis for distinguishing them from the older children because a trial court *must* address a child's placement with relatives.[17]

We conclude that this Court's decision in *In re Olive/Metts* stands for the proposition that, if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best inter-

---

[12] *Olive/Metts*, 297 Mich App at 42.

[13] *Foskett v Foskett*, 247 Mich App 1, 11; 634 NW2d 363 (2001) (quotation marks and citation omitted).

[14] *In re HRC*, 286 Mich App 444, 457; 781 NW2d 105 (2009).

[15] *Olive/Metts*, 297 Mich App at 43-44.

[16] *Id.*

[17] See *id.*

ests. It does not stand for the proposition that the trial court errs if it fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests.

We review for clear error whether the trial court failed to address a significant difference between each child's best interests.[18] The trial court found that *all* the children shared a strong bond with Rinnert. Multiple witnesses testified that all the children loved Rinnert, were bonded with Rinnert, and wanted to return to her home. Craves opined that the oldest daughter found it traumatic to be separated from anyone significant in her life, including her mother, sisters, or the foster family. There is no indication that the trial court clearly erred by failing to find that the oldest daughter shared a particular, stronger bond with Rinnert than the younger children.

Additionally, the trial court *did* distinguish between the children when their needs differed in significant ways, such as when it considered the children's individual and different special needs. We conclude that the trial court did not clearly err by failing to distinguish the individual best interests of the children.

### IV. CONCLUSION

We conclude that the trial court did not clearly err when it found that the evidence supported terminating Rinnert's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j) because Rinnert failed to comply with her service plan by continuing to invite strange men into her home. We conclude that the trial court did not clearly err when it found that terminating Rinnert's parental rights was in the children's best interests. We

---

[18] See *id*. at 44.

also conclude that the trial court did not fail to consider the individual best interests of the children.

We affirm.

WHITBECK, P.J., and FITZGERALD and O'CONNELL, JJ., concurred.