*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re D. WOODFORD-MONTGOMERY, Minor.

UNPUBLISHED
May 19, 2022

No. 358714
Wayne Circuit Court
Family Division
LC No. 2018-000149-NA

Before: SWARTZLE, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Absent aggravating circumstances, reasonable efforts must be made to reunify a family before terminating parental rights. Because we find that reasonable efforts to reunify the respondent mother and minor child were not required under MCL 712A.19a(2)(c), and that the trial court did not clearly err in terminating respondent's parental rights, we affirm.

## I. BACKGROUND

Respondent is epileptic, experiences panic attacks, and suffers from cognitive impairment that limits her understanding and judgment. She lives with her grandmother in an assisted living facility. Eleven months before DWM's birth, respondent's parental rights to her first child, AW, were terminated under MCL 712A19b(3)(c)(*i*) (conditions that led to adjudication continue to exist without reasonable likelihood of rectification within reasonable time) and (g) (parent fails to provide proper care or custody for the child despite financial ability to do so).[1] AW, unlike DWM, was disabled and required significant, specialized care. Prior to the termination of her parental rights to AW, the Department of Health and Human Services (DHHS) provided respondent with extensive reunification efforts and parenting assistance. These efforts were summarized by a panel of this Court in the prior appeal:

---

[1] The trial court also terminated the parental rights of AW's father under MCL 712A.19b(3)(a)(*i*) (child abandoned, parent unidentifiable). Respondent appealed the order terminating her parental rights, which was affirmed by this Court. *In re A. J. Woodford*, unpublished per curiam opinion of the Court of Appeals, issued April 2, 2020 (Docket No. 350835).

The fact that the trial court provided respondent with a hands-on supportive visitation coach arguably represented a needs-specific modification of the usual approach to supervised parenting time. Respondent was provided intensive coaching, hands-on lessons that were repeated as necessary, examples of the skills being taught, and extra time to understand the lessons. Moreover . . . petitioner referred respondent for specialized services through [Neighborhood Services Organization (NSO)] in July 2018 and provided hands-on assistance with the initial intake procedure. Respondent completed the second step required to obtain services, and began individual therapy and parenting instruction on October 17, 2018. She also met with a life skills coach pursuant to NSO's Supporting Parents' Individual Needs (SPIN) program for developmentally disabled parents. As previously indicated, [the DHHS foster care specialist] contacted NSO to increase the frequency of respondent's sessions following the court's April 29, 2019 order, but respondent declined additional therapy because it would interfere with her cosmetology school schedule. [*Woodford,* unpub op at 6.]

Similar to her arguments in this case, respondent argued that the DHHS failed to make reasonable accommodations for her cognitive disability before seeking termination of her parental rights to AW. This Court disagreed, holding in pertinent part:

[P]etitioner did not fail to refer respondent for NSO services or to assist her with the intake process. The record shows that the trial court and petitioner were keenly aware of the responsibility to provide respondent with services appropriate to her cognitive abilities and that they met that responsibility by providing respondent with psychological and psychiatric evaluations, involving her in NSO, engaging her in a supportive visitation program, providing a parenting partner, providing a support person through NSO, and giving respondent time to benefit from the treatment plan.

* * * *

Despite the assistance repeatedly provided to respondent, she could not demonstrate the ability to provide [AW] with the bare minimum care that he needed to live, let alone to thrive. [*Woodford,* unpub op at 6-7.]

Six months after this Court affirmed the termination of respondent's parental rights to AW, the DHHS filed a petition requesting that the trial court take jurisdiction over two-month-old DWM and terminate respondent's parental rights to the child under MCL 712A.19b(3)(g), (i) (parental rights to one or more siblings terminated, with failure to rectify contributing conditions), and (j) (reasonable likelihood of harm if child is returned to parent).[2] The petition alleged that respondent had physical and cognitive disabilities that affected her ability to independently

---

[2] DHHS's petition included allegations that DWM's father had substance abuse issues and requested that a treatment plan be ordered as to the father, but did not seek termination of the father's rights. The father passed away before the adjudication hearing.

supervise and care for DWM. The petition further noted that respondent's parental rights to AW were terminated because she was unable to meet the child's medical needs, care, and medication regime after completing the required training and court-ordered services. The petition stated that reasonable efforts had been made to prevent the removal of DWM, including interviews with pertinent parties and providers, a family meeting, drug screening, referral for maternal infant health services, as well as the previous court-ordered services in the termination proceedings for AW.

During the preliminary hearing, a DHHS investigator acknowledged that DWM did not have significant disabilities or need specialized care like AW, but stated that respondent's cognitive issues posed a concern for DWM because respondent did not know how to properly feed, bathe, or supervise DWM and was generally incapable of independently caring for the child. The petition was authorized and DWM was placed with DHHS with supervised parental visitation. The order specified that reasonable efforts to prevent removal were unnecessary because respondent's parental rights to AW were terminated and she failed to rectify the conditions that led to that termination. Reasonable efforts at reunification were recommended as to the father only.[3]

At the adjudication, the trial court took judicial notice of the court records from respondent's prior termination as to AW. Foster care specialist Domenique Nash testified that she had supervised all of the visits between respondent and DWM and the only real concern was respondent's persistent distraction with the phone during the visits, as opposed to interacting with DWM. Respondent fed and changed DWM on her own during the supervised visits, but often did so at a slower pace than an unimpaired individual. Nash noted that respondent was consistent with her visits and demonstrated a bond with the child. Nash acknowledged that DWM did not have any disabilities or need specialized care like AW. However, Nash testified that respondent had obvious comprehension issues that made it difficult for her to appropriately care for DWM. Nash opined that respondent would require a "network of help" to care for DWM. The trial court concluded that respondent's cognitive delays and lack of independent housing supported jurisdiction over DWM under MCL 712A.2(b)(1) and ordered respondent to undergo a clinic evaluation.

The clinic evaluation indicated that respondent knew relatively little about DWM, tended to externalize responsibility for her lack of involvement, exhibited limited judgment and understanding, and continued to face "many barriers, appearing somewhat immature and perhaps overly challenged by the demands of a complex world." The clinician reported that respondent's performance was only marginal throughout several childcare scenarios. The clinician gave respondent, at best, a poor to guarded prognosis and recommended against reunification efforts.

The trial court ultimately determined that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(g) based on respondent's cognitive limitations, her lack of housing, her associated inability to benefit from the prior services,

---

[3] All of the subsequent orders stated, "Reasonable efforts shall be made to preserve and reunify the family to make it possible for the child(ren) to safely return home" without differentiating between the mother's rights or the father's rights.

and her inability to acquire the necessary skills with further efforts in a reasonable time.[4] The trial court reiterated the "myriad of services" provided during the previous termination case and stated that it was unlikely that "any additional services would help at this point given everything that we provided . . . less than two years ago at this point with [AW]." The trial court concluded that termination was in DWM's best interests and entered a corresponding order. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's factual findings and its decision to terminate parental rights for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A finding is clearly erroneous when this Court is "left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citations omitted). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). This Court must consider "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id.*

## III. ANALYSIS

Respondent does not challenge the trial court's determination that statutory grounds existed for terminating her parental rights. Rather, she argues that the trial court erred in terminating her parental rights because the DHHS failed to make reasonable efforts to reunite her with DWM in light of respondent's special needs. We disagree.

Before seeking termination of an individual's parental rights, Michigan's Probate Code requires the petitioner to make reasonable efforts to reunify the family. *In re Hicks/Brown*, 500 Mich at 85, citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). However, reasonable efforts at reunification are not required when certain aggravating circumstances are present under MCL 712A.19a(2). *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019) (citation omitted). An aggravating circumstance exists when "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c).

Respondent's argument that the DHHS failed to make reasonable efforts has no merit. The DHHS was exempted from providing reasonable efforts or reasonable accommodations for reunification under MCL 712A.19a(2)(c) because respondent's parental rights to AW were involuntarily terminated and respondent's cognitive impairment continued to affect her ability to properly care for a child, not just a child with special needs. As the trial court recognized:

---

[4] The court did not find a statutory basis for termination under MCL 712A.19b(3)(i) and, although it did not explicitly mention petitioner's third asserted statutory ground for termination, MCL 712A.19b(3)(j), the court's order indicated that termination was warranted because "the child would be at risk in [respondent's] custody."

It's still a one-year-old and the child still has a lot of needs albeit not special needs. And the Court just can't see how the Mother's going to care for this child, not today as we sit here, not in the future.

This Court previously concluded that the petitioner met its responsibility under the ADA to provide respondent services appropriate to her cognitive abilities and, despite over 16 months of specialized services, respondent, "could not demonstrate the ability to provide [AW] with the bare minimum care that he needed to live, let alone to thrive." *Woodford,* unpub op at 7. As reflected by Nash's testimony and respondent's clinic evaluation, respondent's cognitive impairment continued to affect her judgment, her comprehension, and her ability to focus on DWM's needs without reminders or assistance. Thus, the conditions that led to the termination of respondent's parental rights to AW continued to exist and the DHHS was not obligated to make reasonable efforts to reunite respondent with DWM.[5] MCL 712A.19b(2)(a).

On this record, we conclude that the trial court did not clearly err in terminating respondent's parental rights and we affirm.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron
/s/ Sima G. Patel

---

[5] The trial court's August 30, 2021 termination order with regard to DWM stated that "[r]easonable efforts were made to preserve and unify the family to make it possible for the child(ren) to safely return to the children's home. Those efforts were unsuccessful." This appears to be a reference to the services provided in the prior termination matter regarding AW because the August 30, 2021 order discussed the services previously offered with regard to AW, noted that the services were specifically tailored to respondent's cognitive impairment, and stated that "reunification [of DWM and mother] is not an option due to the mother's cognitive delays, and the mother's prior inability to benefit from the services provided."