*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. WEST-JEFFERSON, Minor.

UNPUBLISHED
January 31, 2025
2:44 PM

No. 369631
Wayne Circuit Court
Family Division
LC No. 2015-520977-NA

AFTER REMAND

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Respondent-mother appealed as of right the order terminating her parental rights to the minor child, CWJ, under MCL 712A.19b(3)(i) (failure to rectify conditions that led to prior terminations), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). This Court vacated the order terminating parental rights as to respondent-mother and remanded for clarification of the evidence on which the trial court relied in support of its finding of statutory grounds, and an explanation for why those factual findings supported a conclusion that the DHHS established a statutory ground for termination by clear and convincing evidence. *In re C. West-Jefferson Minor*, unpublished per curiam opinion of the Court of Appeals, issued October 23, 2024 (Docket No. 369631), p 4. On remand, the trial court complied with this Court's remand order. Accordingly, for the reasons stated in this opinion, we affirm.

## I. BACKGROUND

This Court's previous opinion laid out the basic facts underlying the termination of respondent-mother's parental rights as follows:

CWJ is the eleventh child born to respondent-mother, who previously had her parental rights terminated as to eight other children.[1]  In May 2023, petitioner, the Department of Health and Human Services (DHHS), filed a petition for permanent custody, requesting that the trial court take jurisdiction over CWJ and terminate respondent-mother's parental rights.  The petition alleged that respondent-mother's rights should be terminated due to her homelessness and neglect of CWJ, her failure to seek adequate prenatal care, and her prior Children's Protective Services (CPS) history and terminations with respect to CWJ's siblings.

At the preliminary hearing, Kenya Brown, author of the petition and a CPS employee, testified that it was contrary to CWJ's welfare to be in the care of respondent-mother, and recommended that the court terminate respondent-mother's parental rights.  At the time, CWJ was placed with respondent-mother's friend pursuant to a safety plan.  However, Brown testified that CWJ would likely be removed from the friend's care.  The court authorized the petition, and following the hearing, CPS removed CWJ from the friend and placed him with Derrick Davis, the father to two of CWJ's biological siblings.

In July 2023, the trial court held a combined adjudication and statutory-grounds hearing.  Brown again recommended that the court terminate respondent-mother's parental rights based on the circumstances leading to her prior terminations, her failure to complete prior services, her lack of housing, and her limited prenatal care while pregnant with CWJ.  In August 2023, the trial court issued a written opinion and dispositional order, finding jurisdiction over CWJ by a preponderance of the evidence under MCL 712A.2(b)(1) and (2), and that a statutory basis existed for the termination of respondent-mother's parental rights under MCL 712A.19b(3)(i) and (j).

The best-interests hearing was held over two days in September and October 2023.  Anette Honstain, a foster care supervisor with the Children's Center, testified regarding respondent-mother's visitation, lack of attendance at CWJ's medical appointments, and outstanding housing concerns.  Honstain also indicated that CWJ may have been harmed while in the care of respondent-mother's friend.  Honstain concluded that it was in CWJ's best interests to terminate respondent-mother's parental rights and allow Davis to adopt him.  Brown concurred with Honstain's recommendation.  Respondent-mother testified that she wanted CWJ to live with her, highlighting her newly obtained housing and changes that she made in her life to allow her to care for CWJ.  The trial court found by a preponderance of the evidence that it was in CWJ's best interests to terminate respondent-mother's parental rights.

---

[1] The May 23, 2023 petition to remove CWJ and terminate respondent-mother's parental rights mistakenly states that her parental rights were terminated as to seven children, but the correct number is eight.  The petition fails to mention the name of an additional child involved in the June 2018 termination of respondent-mother's parental rights.

This Court's previous opinion concluded that we were unable to review the trial court's finding that statutory grounds for termination existed without any indication of the facts on which the trial court relied and an explanation for why those facts established a statutory ground for termination. As a result, this case was remanded to the trial court and respondent-mother's argument regarding best interests was not addressed.

On remand, in order to clarify the evidence on which the trial court relied in support of its statutory-ground findings and to explain why those findings supported a conclusion that the DHHS established a statutory ground for termination by clear and convincing evidence, the trial court stated on the record the reasons for the termination of respondent-mother's parental rights to the children born prior to CWJ based on its review of the transcripts, records, and Zoom hearings.[2]

To begin its review of the prior terminations, the trial court looked at the bench trial in this matter. At the July 14, 2023 bench trial, Brown testified that respondent-mother was given a Parent Agency Treatment Plan (PATP) in 2015 that lasted until 2019, through which she was offered parenting classes, individual therapy, a psychological evaluation, and numerous housing services as she was ordered to obtain housing. Brown testified that respondent-mother was unsuccessful in completing any of the services. The trial court then referenced certified orders following hearings to terminate respondent-mother's parental rights to eight previous children. Respondent-mother's parental rights to one child were terminated in January 2016 due to neglect, housing issues, untreated mental health issues, and her failure to follow the PATP. Respondent mother's parental rights to two children were terminated in November 2017 after she voluntarily released her parental rights. In June 2018, respondent-mother's parental rights to four children were terminated after she failed to complete any element of her PATP and her whereabouts were unknown. At the time of the filing of that petition, three out of the four children were found living with respondent-mother in an unsafe and unsuitable home with holes in the walls, roaches throughout, no proper sleeping arrangements for the children, and no food. Respondent-mother's parental rights to one child were terminated in October 2019 after his guardian passed away and respondent-mother never appeared for his case, had no bond with the child, was homeless, and her whereabouts were unknown. The trial court did not address any additional children.[3] In sum, the trial court found that respondent-mother's parental rights were terminated as to the previous children due to serious neglect, homelessness, failure to appear, and failure to complete any aspect of her PATP.

Addressing this case, the trial court stated that the petition was filed due to respondent-mother's lack of housing and lack of prenatal care. Thus, the trial court found that statutory grounds existed to terminate respondent-mother's parental rights under MCL 712A.19b(3)(i) and

---

[2] The trial court indicated that the referee who previously presided over this case was "no longer here."

[3] The May 23, 2023 petition states that respondent-mother gave birth to 11 children, but counting CWJ, plus the eight previous terminations, plus two children that Brown testified were placed with their custodial father and another child that was in a legal guardianship, the total number of children is 12. Without the transcripts from the prior termination hearings, it is unclear the exact number of children that respondent-mother had.

(j) as respondent-mother failed to rectify the conditions that led to the prior termination of her parental rights and there was a reasonable likelihood CWJ would be harmed if returned to respondent-mother. The trial court based its findings on respondent-mother's failure to comply with her PATP in the past, her continued homelessness, and her neglect of CWJ by failing to seek prenatal care.

## II. STATUTORY GROUNDS

Respondent-mother argues that the trial court clearly erred in its determination that statutory grounds for termination existed under MCL 712A.19b(3)(i) and (j). We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). This Court reviews for clear error a trial court's finding that statutory grounds exist for termination. *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 272-273; 976 NW2d 44 (2021) (quotation marks and citation omitted). "Even if conditions improved in the months before the termination hearing, a trial court may look to the totality of the evidence to determine whether a parent accomplished meaningful change in the conditions that led to adjudication." *Id*. at 334.

MCL 712A.19b(3) provides:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

The conditions that led to respondent-mother's prior terminations were physical neglect, mental health issues, abandonment, and a lack of stable housing. When CPS became involved with CWJ's case, he was removed from respondent-mother due to her lack of housing, limited prenatal care, and prior terminations. At the time the petition was filed, respondent-mother was living in a hotel, but trying to obtain a Section 8 voucher. Despite respondent-mother previously receiving numerous housing resources in connection with her prior termination proceedings, she still had not rectified her housing problems, as evidenced by her homelessness. Thus, at the adjudication and statutory grounds stage, there was ample testimony referenced by the trial court on remand that respondent-mother did not rectify the housing problem that led to her prior terminations.

On appeal, respondent-mother argues that because she secured housing and has a job, the conditions that led to her prior terminations have been rectified. And indeed, following the adjudication and statutory grounds hearing, respondent-mother testified, at the best-interests hearing, that she obtained housing through a Section 8 voucher, and furnished the home with items to care for CWJ. However, in making this argument, respondent-mother improperly relies on testimony from the best-interests hearing to establish that the trial court erred in its statutory-grounds determination. At the time of the adjudication and statutory grounds hearing, the evidence showed that respondent-mother's housing problems were not rectified because she was living at a hotel. Thus, the trial court properly found that there were statutory grounds for termination based on the evidence presented at the time. Notwithstanding respondent-mother's improper reliance on best-interests testimony, the record also reflects that although respondent-mother obtained housing, she jeopardized it by allowing an adult to stay with her that was not included on her Section 8 voucher. Further, the trial court found that the housing was still "unsuitable." Thus, housing issues still persisted beyond the adjudication and statutory grounds hearing, such that there was no meaningful change in the conditions that led to adjudication.

Accordingly, the trial court properly determined on remand that there was clear and convincing evidence to terminate respondent-mother's parental rights under MCL 712A.19b(3)(i). This Court need not consider additional grounds for the trial court's decision if termination was supported by at least one statutory ground. *Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334. In other words, because a statutory ground exists under MCL 712A.19b(3)(i), this Court need not consider additional grounds for the trial court's decision.

## III. BEST INTERESTS

Respondent-mother argues that the trial court clearly erred in its determination that it was in CWJ's best interests to terminate her parental rights under MCL 712A.19b(5). We disagree.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). Whether termination is in the child's best interest must be established by a preponderance of the evidence. *Id.* at 733. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted).]

The trial court is also required to consider a child's placement with relatives, which weighs against termination. *In re Atchley*, 341 Mich App at 347. However, this alone is not dispositive because

a trial court may still terminate parental rights in favor of placing a child with a relative if termination is in the child's best interests. *Id.*

While respondent-mother highlights her visitation record and bond with CWJ, improvements in her housing situation, and her willingness to participate in a service plan, these factors do not overcome the evidence that termination of respondent-mother's parental rights is in CWJ's best interests. The record shows that respondent-mother's parenting ability is compromised by her poor decision making and minimization of behaviors that led to her prior terminations. Her failure to attend any of CWJ's medical appointments, despite her awareness that he requires medical support, further evidences her lack of ability to properly parent and care for CWJ. Respondent-mother had a history of leaving her children with perpetrators of abuse, and appears to have done the same with CWJ.[4] Further, respondent-mother abandoned her psychological treatment and medications, despite not receiving clearance from a therapist to do so. Respondent-mother also has a history of failing to comply with any aspect of a PATP, so it is unlikely that she would participate in services now as she alleges. In addition, respondent-mother's decision to have an adult residing in her Section 8 housing was also a potential threat to the stability of her home.

Further, although relative placement weighs against termination and CWJ was placed with Davis, who is his fictive kin and was identified as a relative placement, the trial court found that under Davis's care, all of CWJ's needs are met, and Davis could provide CWJ with permanency, safety, stability, and a bond with his other siblings. Davis was also committed to adopting CWJ and termination of respondent-mother's parental rights would allow the adoption to move forward.

The foregoing facts demonstrate by a preponderance of the evidence that termination was in CWJ's best interests. Accordingly, we conclude that the trial court did not clearly err by finding that it was in CWJ's best interests to terminate respondent-mother's parental rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[4] At the best interests hearing, Brown testified regarding an investigation on February 8, 2017, regarding respondent-mother allowing a perpetrator of physical and sexual abuse against two of the children to live in her home with the children. In this case, respondent-mother chose a friend to care for CWJ. While in the care of respondent-mother's friend, CWJ was discovered to have a hairline skull fracture, swollen eyes, and a skin condition. As a result, CPS suspected that respondent-mother's friend may have harmed CWJ while he was in her care.