*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BLEVINS/DIALS/HOLLAND, Minors.

UNPUBLISHED
February 14, 2025
9:49 AM

No. 371097; 371183
Wayne Circuit Court
Family Division
LC No. 2023-002384-NA

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

In these consolidated appeals, petitioner, the Department of Health and Human Services (DHHS), appeals the trial court order denying its petition to terminate respondent's parental rights to her children RAB, MMD, RJH, and JJH.[1] Although the trial court found that it was in the best interests of respondent's youngest child, CM, to terminate respondent's parental rights,[2] it found that it was not in the best interests of her four older children to terminate her parental rights. Because that finding was clearly erroneous, we reverse and remand for entry of an order terminating respondent's parental rights to RAB, MMD, RJH and JJH.

## I. BASIC FACTS

In November of 2023, respondent got into an argument with CM's father. When he stopped responding to her text messages, respondent recorded herself attempting to drown CM, her two-year-old child. In the video, CM was kicking, screaming, and crying while respondent repeatedly tried to submerge him underwater. Respondent sent the video to CM's father, stating that she was going to kill herself *and* "the children in the home." At the time, RJH and JJH were also in the home. Respondent sent the video because she wanted CM's father to see his son being drowned.

---

[1] The appeal in docket number 371097 is by right, and the appeal in docket number 371183 is by leave granted. *In re Blevins/Dials/Holland, Minors*, unpublished order of the Court of Appeals, entered August 29, 2024 (Docket No. 371183).

[2] Respondent has not appealed the termination of her parental rights to CM.

The police were called to the home and respondent was arrested. She told the police officers that she "should've drowned [CM]" and did not appear remorseful for her actions. Respondent was thereafter charged with second-degree child abuse and remained in jail for the duration of the child protective proceedings.

The trial court authorized a petition seeking jurisdiction over the children and requesting termination of respondent's parental rights. Thereafter, respondent entered a plea of no contest to the allegations in the petition. Based upon her plea, the trial court found that there were statutory grounds to take jurisdiction over the children and that there were also statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*iii*).

At the best-interests stage of the proceedings, the caseworker testified that respondent reported that she had depression and anxiety, but, despite being offered resources to treat her mental-health issues, she did not seek treatment. The caseworker further testified that RJH and JJH were both autistic and had learning disabilities. It was uncertain whether respondent wanted to address the children's special needs. However, the caseworker added that both RJH and JJH expressed that they loved respondent, and RJH seemed to want to see her. She attributed this to respondent being their primary caregiver. Similarly, CM's father testified that RJH, JJH and CM all loved respondent and would ask about her on a daily basis. He stated that, if the court ordered him to allow contact, he would allow it. He added that he had never seen respondent abuse any child other than CM, and he did not have a problem with respondent retaining parental rights to RJH and JJH. He only had a problem with her retaining parental rights to his child, CM.

Despite that, CM's father testified that he was willing to adopt RJH and JJH. And the caseworker testified that a guardianship in lieu of termination was not a viable option for them because it would leave them vulnerable to being returned to respondent's care. The caseworker highlighted that respondent had unstable mental health, had committed a violent act toward their sibling, and was not remorseful about doing so. In particular, the caseworker noted that respondent attempted to drown CM because she had a vendetta against CM's father.

As it relates to respondent's oldest two children, RAB reported to the caseworker that, although respondent had scheduled parenting time with him, he had not seen respondent since 2012. He added that he wanted "nothing to do with her." In turn, when MMD's father died, respondent had an opportunity to obtain custody of him. However, at the guardianship hearing, respondent was ordered to participate in services consisting of therapy and parenting classes. Respondent failed to do so, and the guardianship was awarded to someone else. The guardian noted that, as of the time of the termination hearing, respondent had not visited MMD or tried to build a relationship with him for over a year.

Respondent testified regarding the incident with CM, which she described as a mere "nervous breakdown." She explained that she tried to drown him in the video because she hated "broken promises." She explained that when CM's father said that he was going to come and get the children, he should have done so to "give [her] a break." She felt as if she was not getting any help. Respondent admitted to having an anger problem, but stated that she was willing to participate in services and seek mental-health treatment. Finally, she credited herself with providing a home for RJH, JJH, and CM, who were residing with CM's father in the house that

she leased. She admitted, however, that CM's father was also on the lease and that he was paying all the bills.

At the end of the hearing, the trial court found that respondent's abuse was directed solely toward CM. It noted that respondent "submitted [CM] to the abuse of running water over this face, trying to drown him." The court found that respondent's statement to the police that she wished she had actually drowned him was concerning. Likewise, it found "very concerning" that respondent had tried to drown one of her children just to "get back" at CM's father "or to get his attention." As a result, it stated that it was going to terminate her parental rights to him. With respect to the older children, the court found that JJH was too young to express a preference, but stated that the older three children did not want respondent's parental rights terminated, and it noted again that respondent had not physically abused the older children. Thereafter, the court entered an order terminating respondent's parental rights to CM, terminating the court's jurisdiction over RAB and MMD, and retaining jurisdiction over RJH and JJH. This appeal follows.

## II. BEST INTERESTS

### A. STANDARD OF REVIEW

Petitioner argues that the trial court clearly erred by finding that termination of respondent's parental rights to RAB, MMD, RJH, and JJH was not in their best interests. Challenges to a trial court's best-interests findings are reviewed for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 338.

### B. ANALYSIS

"The trial court must order the parent's rights terminated if [petitioner] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App at 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citation omitted).]

Further, this Court has "held that the trial court has a duty to decide the best interests of each child individually." *Id*. at 715 (quotation marks and citation omitted). That is "if the best interests of the individual children *significantly* differ, the trial court should address those differences when

making its determination of the children's best interests." *Id*. In this case, the best interests of RJH and JJH do not significantly differ because they are both autistic children, they are in the same placement, and respondent threatened to murder both of them contemporaneously with her attempt to drown CM. However, the best interests of RAB and MMD should be considered separately because RAB is in his non-respondent father's custody and MMD is in a guardianship.

Here, when making the best-interests findings, the trial court noted that it was "concerned" that respondent attempted to drown CM and that she expressed regret at not having done so. The court was also "very concerned" that her reason for trying to murder her child was because she was trying to "get back" at CM's father or to get his attention. Yet, despite those findings, with regard to the older four children, the court found that the fact that they loved respondent and that respondent only tried to drown one child, meant that it was not in their best interests to have respondent's parental rights terminated.

As it relates to RJH and JJH, the court's focus on the fact that respondent had only physically abused CM was clearly erroneous. "Evidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011). Here, although respondent only tried to drown CM, her correspondence to CM's father stated that she was going to kill herself *and the children in the home*. RJH and JJH were in the home at the time. It cannot be overstated that, despite all three of her at home children doing nothing wrong, respondent attempted to drown CM and threatened to kill RJH and JJH merely because she was angry with CM's father. As a result, we conclude that the trial court clearly erred by focusing solely on physical abuse and ignoring respondent's threat to destroy all three of her children and herself.

Additionally, the court minimized testimony that respondent had untreated mental health issues and anger issues, both of which appear to have contributed to her decision to attempt to drown CM and her threat to murder RJH and JJH. Although she was offered services, the caseworker testified that respondent had not sought treatment. Moreover, when respondent was directed to attend therapy and parenting classes in order to become the legal guardian for MMD, she failed to do so. Accordingly, the record plainly demonstrates that, contrary to respondent's testimony that she would be willing to participate in services, she has not followed through when such services were previously offered. Given respondent's history, the trial court clearly erred by finding sufficient the fact that respondent expressed a willingness to engage in treatment once she was released from jail.

As it relates to RJH and JJH, the record reflects that they were in a stable environment with CM's father, who was willing to adopt them. Further, CM's father expressed that he would comply with the court's directive regarding their future contact with respondent. Respondent, through her vendetta-based attempted drowning of CM, has demonstrated an inability to put her children's needs ahead of her own. She has further shown that she poses a substantial risk to the safety of her children. Given the severity of respondent's actions against CM, her threats to murder RJH and JJH, and her failure to previously seek treatment to address her mental-health and anger-management issues, the trial court clearly erred by finding that their bond with respondent outweighed their need for permanency, stability, and safety.

With regard to RAB, the trial court found that he loved respondent and did not want her parental rights to be terminated. Initially, RAB reported to his caseworker that he wants nothing to do with respondent. And, although the guardian ad litem (GAL) later reported that RAB did not want respondent's parental rights terminated,[3] that desire does not negate that he wants nothing to do with her nor that his last contact with her was in 2012. Thus, notwithstanding RAB's desire that respondent's parental rights be maintained, the focus of the court needed to be on what was in RAB's best interests. Here, given the clear lack of a bond between respondent and RAB, her untreated mental-health and anger-management issues, and her heinous and remorseless attempt to drown RAB's youngest sibling, the trial court clearly erred by finding that it was not in RAB's best interest for respondent's parental rights to him to be terminated.

Finally, the trial court found that MMD loved respondent and did not want her parental rights to be terminated. Again, regardless of MMD's desire for respondent to keep her parental rights, the focus must be on his best interests. Here, the record reflects that when MMD's father died, respondent was offered the opportunity to take custody of him. All she had to do was attend therapy and parenting classes. But she did not. As a result, another individual was appointed MMD's guardian. Thereafter, respondent had no contact with MMD for over a year. As such, it is plain that although MMD may have a bond with respondent, she has not reciprocated that bond by making even minimal efforts to maintain contact with him or to try to better herself so that she could obtain custody of him. In light of respondent's attempt to drown MMD's youngest sibling, her untreated mental-health and anger-management issues, and her demonstrated failure to seek treatment, the trial court clearly erred by finding that it was not in MMD's best interests for respondent's parental rights to him to be terminated.

Reversed and remanded for entry of an order terminating respondent's parental rights to RAB, MMD, RJH, and JJH. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado

---

[3] In his argument to the court, the GAL recognized that none of the children wanted respondent's parental rights to be terminated. He argued however, that notwithstanding their desires, he had to advocate for what was in their best interests. He stressed that CM had done nothing wrong, but because respondent was upset with his father, he was almost drowned and would likely have lasting psychological harm as a result. Given the callous nature of respondent's actions, he argued that respondent would be a safety risk to any children in her care.