*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. L. CRUMBEY, Minor.

UNPUBLISHED
June 13, 2025
9:25 AM

No. 372280
Wayne Circuit Court
Family Division
LC No. 2023-000742-NA

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

MALDONADO, P.J. (*dissenting*).

In this termination of parental rights case, the trial court severed the relationship between respondent and his young son, JC, despite a lack of evidence that termination was in JC's best interests. Consequently, I dissent.

"Unlike some other states . . . Michigan does not have a process by which a parent can seek to have their parental rights reinstated. Accordingly, in this state, termination of parental rights could be properly characterized as tantamount to imposition of a civil death penalty." *In re Bates*, 514 Mich 862, 871 n 9; 8 NW3d 578 (2024) (CAVANAGH, J., dissenting) (quotation marks and citation omitted). Not only does termination represent a death for the parent, it is also a death for the child. Therefore, to determine what is truly in a child's best interests, a trial court should consider whether termination is necessary to protect the child from harm and whether termination would actually benefit the child. *Id*. at 871-872. Such an analysis must not be superficial. Instead, a trial court must analyze the complete record and fully weigh the relevant factors, which, in my opinion, was not done in the present case.

JC has a strong bond with respondent, which is amply supported by the record. JC's mother testified that JC "definitely" has a bond with respondent, who visited JC every week prior to termination. Regarding those visits, the DHHS case worker testified that JC enjoys spending time with respondent. Terminating respondent's parental rights, therefore, would result in instability in JC's life as it would remove a bonded figure from his accustomed weekly routine. In light of the evidence of a strong bond, the trial court had to determine that there were even stronger reasons in JC's best interests to terminate respondent's parental rights. See *In re Moss*, 301 Mich App 76,

90; 836 NW2d 182 (2013) (requiring that a best-interests determination be supported by a preponderance of the evidence).

However, in my view, the trial court failed to conduct an individualized determination of JC's best interests. Rather, the trial court concerned itself with how the allegations against respondent affected *other* members of JC's family. For instance, the trial court credited the testimony of JC's mother that "things are very difficult" for *her* and that *she* was "having a tough time keeping this family going and keeping things together" while trying not to tell JC "what went on." Likewise, the trial court conflated JC's interests with those of his half-sister. The trial court worried that JC's half-sister would be "uneasy" around him if he remained in contact with respondent. Thus, the trial court ordered termination to "let [JC] and his family . . . move on."

I agree that the trial court certainly could consider how respondent's continued relationship with JC impacted the entire family dynamic, but again, the focus should have been on JC. To that end, the DHHS did not present evidence that the stress on *other* family members also created stress for JC, such as through testimony from a mental health professional, JC's mother, or JC himself. In other words, the trial court's concerns for JC's stability and mental health are based on assumptions regarding the record testimony—the trial court jumped to the conclusion that the stress on the family was negatively impacting JC.

Moreover, JC's mother testified that she did not plan to deny visits with respondent if given the opportunity because it is best for JC to have a relationship with respondent. Therefore, the trial court could have left it up to JC's mother to continue to balance JC's best interests with those of the rest of the family. This approach would have retained respondent's parental rights, while giving JC's mother full discretion over his contact with respondent.

In sum, I do not think that it is too much to ask that, when weighing something that has been compared to a "death penalty," we take the time and resources needed to truly evaluate what is in a child's best interest. On this record, I do not believe that a preponderance of the evidence supported that termination was in JC's best interests. See *In re Moss*, 301 Mich App at 90. To the contrary, I am left with a definite and firm conviction that the trial court made a mistake. See *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). Accordingly, I dissent.


/s/ Allie Greenleaf Maldonado