*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MINTER, Minors.

UNPUBLISHED
August 11, 2022

No. 358693
Wayne Circuit Court
Family Division
LC No. 2017-000662-NA

Before: SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's order terminating his parental rights to minor children, ZLM, ZSM, and ZCM, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist with no reasonable likelihood of rectification within a reasonable time), (c)(*ii*) (failure to rectify other conditions warranting jurisdiction after being given notice, a hearing, and a reasonable opportunity for rectification), (g) (failure to provide custody and care despite financial means to do so), and (j) (risk of harm to child if returned to parent). On appeal, respondent argues that the trial court clearly erred in terminating his parental rights because (1) petitioner presented insufficient evidence to terminate his parental rights on the statutory grounds found satisfied below, and (2) termination did not serve the children's best interests. We disagree and affirm.

## I. BACKGROUND

This case commenced in April 2017 when the Department of Health and Human Services petitioned the trial court take jurisdiction over ZLM, ZSM, and ZCM under MCL 712A.2(b)(1) and (2), and enter an order removing the children from the home, making them temporary court wards, and placing them with petitioner. The petition alleged that it was contrary to the children's welfare to remain in the home because both respondent and the mother had placed them in unsafe situations and engaged in physical disputes in front of them. The petition also alleged that

---

[1] The children's mother, a respondent below, passed away on November 14, 2020, and is not a party to this appeal. Accordingly, this opinion simply refers to respondent-father as "respondent" and to the children's mother as "the mother."

respondent failed to provide suitable housing for the children, was currently incarcerated, and had an extensive criminal history.

Respondent admitted to the petition's allegations, and the trial court entered an order of adjudication, taking jurisdiction over the children under MCL 712A.2(b)(1) and (2), and made them temporary court wards. In June 2017, respondent was given a parenting plan requiring him to complete and benefit from therapy and other parenting services, secure adequate housing and a legal source of income, maintain regular contact with foster care workers, attend all court hearings, and regularly visit the children. A series of dispositional review hearings occurred from September 2017 to November 2019. At first, respondent engaged in services and progressed well toward completion of his parenting plan. But his progress derailed in June 2018 after being incarcerated for operating while intoxicated (OWI). Respondent was released in November 2018 and given two years' probation.

Respondent thereafter continued progressing with his parenting plan and came very close to achieving reunification until another incident in July 2019 when respondent assaulted Kiara Conway, respondent's adult daughter and the children's relative caregiver. Respondent pleaded guilty to assault and, because of his probation for the prior OWI conviction, again became incarcerated. In November 2019, petitioner filed a supplemental petition requesting termination of respondent's parental rights due to his recent convictions and incarceration, and his failure to sufficiently comply with and benefit from his parenting plan. Following a combined adjudication trial and termination hearing on the supplemental petition, the trial court found statutory grounds for termination under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (j), but it determined that termination did not serve the children's best interests. The trial court, therefore, ordered the parties to pursue a guardianship with Conway to provide the children with needed stability while still preserving respondent's bond with them. Respondent obtained release from prison just before this decision in June 2020.

However, due to continued interference from respondent and further deterioration in their relationship, Conway later rescinded her willingness to serve as guardian, and instead wanted to pursue adoption. During August 2020, respondent had to leave visitation after acknowledging that he would hurt Conway if he saw her. Respondent also threatened Conway when leaving visitation in January 2021, and he continued to generally exhibit aggressive behavior toward her and case workers involved in the case. Accordingly, petitioner filed another supplemental petition in April 2021, again requesting termination of respondent's parental rights.

Following another combined adjudication trial and termination hearing, the trial court again found statutory grounds existed for termination under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (j). Specifically, the referee conducting the proceedings reasoned that the during the case's pendency for over four years respondent was incarcerated a year and a half. She also noted the initial adjudication based on neglect, domestic violence, and poor parental judgment, as well as, the earlier finding that statutory grounds for termination were satisfied. Although the court previously ordered a guardianship to provide stability while preserving respondent's bond with the children, the referee found that further deterioration of respondent's relationship with Conway made that arrangement impossible.

Further, while acknowledging respondent's success in finding housing and employment, the referee stated that respondent had not sufficiently resolved the "primary issue" of parental judgment since respondent's previous adjudication and termination hearing (when statutory grounds for termination were initially found satisfied). The referee further noted respondent's lack of responsibility and tendency to blame others for the current situation, plus his stated desire in September 2020 to stop planning for the children. The referee concluded, therefore, that if given more time respondent would not remedy his remaining issues.

As for the children's best interests, the referee concluded that the court had exhausted efforts to establish a guardianship, which was no longer viable given the circumstances of the case. Accordingly, the referee concluded that it served the children's best interests for respondent's parental rights to be terminated and for them to be adopted. The trial court agreed and entered an order terminating respondent's parental rights. This appeal followed.

## II. STANDARDS OF REVIEW

To terminate parental rights, a trial court must find that a statutory ground has been established by clear and convincing evidence. *In re MOTA*, 334 Mich App 300, 320; 964 NW2d 881 (2020). We review for clear error the trial court's findings and rulings regarding statutory grounds. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *Id*. (quotation marks and citation omitted; elipsis in original). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quotation marks and citations omitted).

Whether termination of parental rights is in the child's best interests must be established by a preponderance of evidence. *Id*. We review for clear error the trial court's findings and ruling that termination serves the child's best interests. *Id*.

## III. ANALYSES

Respondent argues that the trial court clearly erred in terminating his parental rights because petitioner presented insufficient evidence to establish the statutory grounds found satisfied below. We agree regarding MCL 712A.19b(3)(c)(*ii*), but disagree on the other statutory grounds.

A trial court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) and (*ii*) if the parent

> was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions,

the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Under MCL 712A.19b(3)(g), termination is warranted if the trial court finds, by clear and convincing evidence, that

[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Lastly, a trial court may also terminate parental rights under MCL 712A.19b(3)(j) if it finds, by clear and convincing evidence, that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

Specifically, respondent argues that the trial court clearly erred in finding statutory grounds for termination when he continued working toward compliance with his treatment plan. Respondent claims that, despite occasional periods of noncompliance because of his incarceration, he had income, participated in services, stayed in contact with petitioner, actively sought housing (and had at one point secured adequate housing), and regularly visited the children throughout this case. He asserts that he also consistently showed love and concern for the children and an intent to plan for their future, even when incarcerated. According to respondent, he was simply never given sufficient trust to parent his children. He contends that much of the problem stems from his poor relationship with Conway, the children's relative caregiver.

Respondent argues that petitioner presented no evidence that the conditions of respondent's adjudication could not be rectified within a reasonable time or that he would be unable to provide proper custody and care for the children. And while failure to comply with a treatment plan constitutes evidence that a child would be harmed if returned to the noncompliant parent, respondent argues that his substantial efforts throughout this case overcome any sporadic periods of noncompliance. He asserts that, given his substantial compliance throughout the case and his continued willingness to engage in reunification services, the court prematurely terminated his parental rights.

As an initial matter, we conclude that the trial court's finding under MCL 712A.19b(3)(c)(*ii*) was erroneous. The trial court made no effort to explain what other conditions existed in this case apart from those which led to the adjudication (mainly respondent's criminality and aggressive tendencies). Nor does the record independently reveal any other conditions existing at the time of termination. While respondent's earlier issues with alcohol, which were not addressed in the initial petition or the accompanying adjudication and disposition, could conceivably trigger Subsection (3)(c)(*ii*), the record indicates that he addressed this concern, *not* that there was no reasonable likelihood of rectification in the future. Indeed, respondent never failed any of his required drug or alcohol screenings, and his unrefuted testimony shows he stopped drinking following the 2018 OWI.

This error, however, was harmless because the trial court correctly found that clear and convincing evidence established statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), and (j). In *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009) this Court explained:

> The record does not substantiate the existence of any additional conditions causing the child to come within the court's jurisdiction, as required to terminate parental rights pursuant to MCL 712A.19b(3)(c)(*ii*). But because the evidence amply supports termination under two alternate statutory subsections, the court's invocation of subsection (c)(*ii*) qualifies as harmless error.

Concerning Subsection (3)(c)(*i*), respondent was able to complete various services throughout the case and, at the time of termination, had apparently secured adequate housing and was earning income. The record, however, reflects that unresolved issues remained even four years after respondent's initial adjudication and disposition. Critically, the initial petition was filed, in part, due to respondent's violent behavior (specifically, domestic abuse between him and the mother), improper parenting, and criminality (notably, he admitted being incarcerated when the initial removal petition was filed). All of these remained unresolved issues of concern. Regarding violence and improper parenting, the record establishes that respondent assaulted Conway (his adult daughter and the children's relative caregiver) almost two years into the case and after completing services meant to prevent such behavior. Further, he continued to display threatening and aggressive behavior toward Conway and others associated with the case. Respondent's behavior caused Conway to no longer pursue a guardianship. Respondent's continued friction with Conway, as well as his stated desire in September 2020 to stop planning for the children, demonstrated that he remained more focused on his own interests regarding the children rather than what was actually best for them.

Respondent's criminality continued to be an ongoing issue throughout the case and remained a concern. Specifically, respondent was imprisoned *twice* since his initial adjudication, with his most recent offense occurring almost three years after the children were placed into care. While there were times that respondent substantially complied with his parenting plan and came close to achieving reunification, his progress repeatedly derailed by his successive imprisonments. Moreover, given his repeated backsliding and respondent's general lack of progress and failure to benefit over such an extensive period, the trial court correctly concluded that respondent would be unable to rectify these remaining issues if given more time and no reasonable likelihood existed that the conditions that brought the children into care would be rectified within a reasonable time.

Because clear and convincing evidence established statutory grounds for termination under Subsection (3)(c)(*i*), we need not address the other statutory grounds the trial court found satisfied below. See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011) ("Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights,

even if the court erroneously found sufficient evidence under other statutory grounds.").[2] Accordingly, we decline to address the other statutory grounds challenged by respondent.

Respondent also argues that termination of his parental rights did not serve the children's best interests. We disagree.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation omitted). To determine whether termination of parental rights serves a child's best interests, the court should consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (citation and quotation marks omitted). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

Respondent argues that the trial court clearly erred in finding that termination of his parental rights served the children's best interests because the court failed to adequately consider his bond with the children. Respondent notes that the record showed he loved his children, wanted to continue working for them to be returned to his care, and was passionate about getting them back. In fact, he was apparently in full compliance with his parenting plan before being incarcerated. Respondent regularly visited the children, who were always engaged and excited to see him. But respondent argues that, despite factors weighing against termination—the parent-child bond in particular—the trial court's best-interest finding merely relied on the apparent infeasibility of a guardianship without addressing the other myriad factors relevant to the children's best interests. Because both the COVID-19 pandemic and respondent's incarceration interfered with his reunification plans, he claims that he should have been given more time once released to achieve reunification.

We conclude that the trial court did not clearly err in its best-interest findings. As an initial matter, respondent is correct that the referee never explicitly evaluated his bond with the children when concluding that termination served the children's best interests. Instead, the referee simply acknowledged her earlier finding that the children's best interests favored guardianship as "a way to preserve a parent-child bond while also providing a safe, stable home environment for the kids . . . ." Because efforts toward a guardianship had been exhausted and became no longer viable, the referee concluded that the children's best interests now favored termination and adoption.

Although this best-interest finding seemingly relied only on the infeasibility of a guardianship, with no specific mention of any other best-interest factors, we note that the referee took judicial notice of the file and the analysis conducted in conjunction with the earlier best-

---

[2] After review of the entire record, we conclude that the trial court did not err by finding that clear and convincing evidence also established statutory grounds for termination under Subsections (3)(g) and (j). Respondent's arguments, therefore, lack merit.

interest finding from July 2020. While the referee at that time found that the children's best interests favored a guardianship over termination based on the totality of factors, she explicitly stated that it was "a close call." The referee noted that the children's young ages, the length of time they had been under care, the stability of Conway's home, and respondent's unresolved parenting issues all favored termination. But she ultimately recommended a guardianship as a way to preserve respondent's "strong bond" with the children. The referee stated:

> I don't think the children should be made to wait any longer on a plan of reunification. They have waited three years already and they need stability, and that stability is with Ms. Conway. She is their stability and their provider and caregiver and that should continue. But I think we can maintain a relationship with the father. And I think that the children would benefit from having a father figure in their life and knowing where their father is and having a positive relationship with him and I believe we could accomplish all of that through a guardianship.

The referee expressly recognized a bond between the children and respondent.

Accordingly, the trial court had already considered the parent-child bond and other best-interest factors when it first narrowly denied termination in favor of a guardianship. Evidence, however, established that such a guardianship would be impossible given the present circumstances. It was not clearly erroneous for the trial court to terminate respondent's parental rights without explicitly readdressing these other factors. Further, the record reflects that, despite respondent's bond with the children and his willingness to engage in services, termination served the children's best interests by providing them stability and permanency. Particularly, respondent remained unable to care for the children after four years of reunification services (much longer than in a typical case), during which he was repeatedly incarcerated and regressed and did not successfully complete his parenting plan. Respondent's inability or unwillingness to work with Conway on a guardianship to enable reunification established that termination served the children's best interests.

Affirmed.

/s/ David H. Sawyer
/s/ Douglas B. Shapiro
/s/ James Robert Redford