*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HART/HART-WHITE, Minors.

UNPUBLISHED
January 11, 2024

No. 365762
Wayne Circuit Court
Family Division
LC No. 2019-000134-NA

Before: K. F. KELLY, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, KDH and KHW, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist). Because the trial court did not err when it found that termination of respondent's parental rights was in the children's best interests, we affirm.

## I. BACKGROUND

Throughout 2018, Children's Protective Services ("CPS") investigated this family for complaints of alcohol abuse, improper supervision, physical abuse, physical and educational neglect, and domestic violence. In December 2018, while respondent and the two children were staying at a shelter in Jackson, Michigan, a staff person contacted CPS to report that respondent was drunk and unable to properly supervise her children. It was also reported that, the previous day, respondent, while intoxicated, struck then nine-year-old KHW across the face and had earlier put out a cigarette on KHW's face. During the CPS investigation that followed, respondent admitted to drinking large quantities of alcohol in front of the children and attempting to care for them while intoxicated.

On December 6, 2018, petitioner, the Department of Health and Human Services ("DHHS"), petitioned the Jackson Circuit Court to take jurisdiction and remove the children from respondent's care and the care of their respective fathers.[1] An ex parte order entered that day

---

[1] In July 2021, the trial court terminated the parental rights of KHW's father and KDH's father. Neither father appeared during any of the lower court proceedings, nor have they appealed.

authorized DHHS to remove the children and place them in protective custody. The Jackson Circuit Court later authorized the petition and formally removed the children from the care of respondent and their respective fathers. In January 2019, the matter was transferred to Wayne County.

In August 2019, respondent entered a plea in which she admitted that at the time the petition was filed, she had a severe alcohol abuse problem, that she was impaired by alcohol in front of her children, and that her alcohol abuse was harmful to the children's psychological well-being. The court accepted respondent's plea and found statutory grounds to assume jurisdiction over the children. During the dispositional hearing that immediately followed, the court ordered respondent to comply with a parent-agency treatment plan that included, among other things, respondent's participation in parenting classes, a psychological evaluation, and substance abuse counseling. Respondent was also required to attend parenting time and submit to random weekly drug and alcohol screens. Finally, respondent was required to communicate with the caseworker and obtain and maintain suitable housing and a legal source of income.

During the three years that followed the adjudication and disposition, respondent's participation in her treatment plan was inconsistent and largely unsuccessful in removing the barriers to reunification Ultimately, in August 2022, DHHS petitioned the court to terminate respondent's parental rights. After three days of hearings, the trial court found that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). The court further found that termination of respondent's parental rights was in the children's best interests. Respondent now appeals.

II. ANALYSIS

Respondent's sole argument on appeal is that the trial court erred when it found that termination of her parental rights was in the children's best interests. We find no error in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *In re White,* 303 Mich App 701, 713; 846 NW2d 61 (2014). These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *Id.* at 713-714. In addition, the trial court should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones,* 286 Mich App 126, 131; 777 NW2d 728 (2009).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White,* 303 Mich App at 713. The court's focus must be on the child and not the

-2-

parent. *In re Moss,* 301 Mich App 76, 87; 836 NW2d 182 (2013). Of note, when more than one child is involved, a trial court must consider each child's best interests separately. *In re Olive/Metts Minors,* 297 Mich App 35, 42; 823 NW2d 144 (2012). A trial court need not, however, make "individual" and "redundant factual findings" if the children's interests do not significantly differ. *In re White*, 303 Mich App at 715-716. Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App at 129. The trial court's finding is clearly erroneous "if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

The trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests. There was overwhelming evidence that respondent could not provide her children with safety, stability, and permanence.

After the children were removed from the home in late 2018, respondent entered a plea in which she admitted to a severe alcohol abuse issue and that she attempted to parent the children while intoxicated. Respondent also admitted that her alcohol abuse was harmful to the children's psychological well-being. Respondent was offered services that included individual therapy with a substance abuse component. Respondent was also required to submit to weekly random drug and alcohol screens. Despite these court-ordered services, respondent did not consistently participate in the random weekly drug and alcohol testing. As a consequence, there was simply no credible evidence from which it could be determined that respondent was living a sober and substance-free lifestyle. Respondent's refusal to submit to the screening clearly impeded the therapeutic process. The caseworker testified that respondent was engaged during her therapy, but because respondent had not consistently participated in screens, the therapist was unable to actually monitor or confirm that respondent was abstaining from alcohol.

The court and the parties all recognized that the results of these screens would confirm respondent's sobriety and help determine whether the children would be safe in her care. Indeed, the court granted respondent an inordinate amount of time to comply with the requirement that she participate in weekly random drug and alcohol screening. The court continued the termination hearing twice to provide respondent with the opportunity to submit to the required drug and alcohol screens. In addition, DHHS attempted to work with respondent to assist her in providing the requested screens. It also was willing to accept the results of several screens that allegedly were performed by one of respondent's employers. Indeed, the court continued the termination hearing 30 days to allow respondent to produce the employment drug screens. The promised test results never materialized and respondent did not attend the final day of the termination hearing when the screening results were expected to be produced. The record was devoid of any evidence from which the court could conclude that respondent had adequately addressed her alcohol abuse issues.

Respondent's cavalier attitude toward the drug-screening component of her treatment plan was probative of her lack of commitment to the children. Similarly, her inconsistent attendance at parenting time was compelling evidence that respondent was unwilling or unable to put her children's needs ahead of her own. The caseworker explained that respondent was offered parenting time once a week, for two hours. During the approximately three years the children

were in care, respondent missed 60 percent of the offered visits. Even when the COVID-19 pandemic led to virtual visits, a less engaging alternative but a more convenient one, respondent only had a 75% attendance rate. Further, when respondent did attend parenting time, she was offered two-hour visits, but she was only willing to stay for one hour. Respondent offered a multitude of excuses for her unwillingness to take advantage of all of the parenting time allotted, but her testimony in this regard was often contradictory, thereby affecting the credibility of her excuses.

Respondent argues that a strong bond existed between her and the children. Admittedly, the caseworker confirmed the presence of an appropriate parent-child bond, and there was testimony that the children were always happy to see respondent. The guardian ad litem also reported that KHW, a teenager at the time of termination, did not want respondent's parental rights terminated. However, the strength of the bond is questionable in light of respondent's poor participation in parenting time. There was testimony that respondent became belligerent during parenting time and she was overheard blaming KHW for the family's circumstances. In any event, regardless of the strength of any bond, the trial court could properly conclude from the evidence that this factor did not outweigh the children's need for a safe and stable home that was free from alcohol abuse and a parent with unresolved substance abuse issues.

A preponderance of the evidence established that respondent could not provide a safe, stable, and permanent living environment for the children. By contrast, there was testimony that the children were thriving in their nonrelative foster home. At the time of termination, the matter had been pending for more than three years. KHW was 13 years old and had spent critical years in a child's development in the foster care system. KDH, seven years old at the time of termination, had spent more than half of her young life in foster care. The children had been placed together in the same foster home for more than 2½ years. The foster parent was meeting the children's needs and a bond existed between the children and their caregiver. Although the foster mother expressed a willingness to provide long-term care for the children, she had not yet decided whether she was able to adopt both children. Nonetheless, the caseworker opined that the children were better off in the current foster home than they would be if returned to respondent's care. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts Minors*, 297 Mich App at 41-42.

At the time of termination, the children were in a stable home where their needs were being met and would continue to be met until a more permanent placement could be achieved. Termination of respondent's parental rights was the only avenue by which the children had the possibility of achieving the permanency offered by a stable adoptive home. Accordingly, the trial court did not clearly err when it found, by a preponderance of the evidence, that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Noah P. Hood