*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HARRIS, Minors.

UNPUBLISHED
May 20, 2026
10:34 AM

No. 378488
Wayne Circuit Court
Family Division
LC No. 2025-000199-NA

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Respondent appeals by right the order terminating her parental rights to her children, AH and ZH, under MCL 712A.19b(3)(b)(*ii*) (child or sibling of the child has suffered physical injury, physical abuse, or sexual abuse, and parent who had opportunity to prevent injury or abuse failed to do so), (g) (although financially able, parent failed to provide proper care or custody), and (j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent is the adoptive mother of AH, ZH, and her now-deceased daughter, NH. Respondent has a grown biological daughter, Shannon, who has her own children with Jarvis Butts. In 2012, respondent and Shannon learned that Butts had been previously convicted of criminal sexual assault against children and was a registered sex offender. Despite this knowledge, respondent allowed Shannon, Butts, and their children to live in her home with AH, ZH, and NH. She also allowed her children to have repeated, unsupervised contact with Butts.

In January 2024, NH did not return home from school. Police believed that Butts was the last person to be seen with NH. NH was presumed dead, and Butts was charged and bound over for first-degree murder and first-degree criminal sexual conduct. After NH's disappearance, some of respondent's family members accused Butts of sexually assaulting NH and other children living in her home. As a result, petitioner, the Michigan Department of Health and Human Services (DHHS), initiated the instant action seeking to terminate respondent's parental rights.

After respondent pleaded no contest to the allegations in the petition, the trial court assumed jurisdiction over the children and found that there were statutory grounds to terminate respondent's parental rights as noted above. Then, during the best-interests hearing, evidence was introduced that, in addition to Butts's sexual abuse, AH was sexually abused by another child living in respondent's home and that, when AH told respondent about this abuse, respondent failed to take any action. AH and ZH also reported that respondent physically abused them. The trial court ultimately found that termination was in the children's best interests. This appeal followed.

## II. STANDARDS OF REVIEW

We review a trial court's best-interests determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

## III. ANALYSIS

Respondent contends that the trial court erred by determining that termination was in her children's best interests. We disagree.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). When determining whether termination is in a child's best interests:

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

On appeal, respondent argues that termination was not in the children's best interests because (1) the trial court failed to give adequate weight to respondent's engagement with her caseworker and participation in individual therapy and parenting time; (2) there was no evidence presented regarding Butts's conduct; (3) respondent's history of adoption demonstrated that she

-2-

was a fit parent; and (4) AH's Kids Talk interview was not admitted, but could have proven that AH was not sexually abused or did not confide in respondent about the abuse.[1]

First, even though respondent was engaged with her caseworkers and attended visits, this did not outweigh the far more severe factors weighing in favor of termination. For example, the record indicates that, while communicative, respondent continually refused to take accountability for the abuse her children suffered, and, while respondent did attend visits regularly, the children themselves did not want to attend because they were afraid of her. Moreover, while respondent argues she was in individual therapy, there is no record evidence confirming her claim, and, even if there were, the record still demonstrates that respondent exhibited poor parenting capabilities, failed to protect her children from harm, and abused and neglected them.

Second, the record belies respondent's claim that there was no evidence presented below regarding Butts's conduct. The petition extensively detailed several allegations of abuse perpetrated by Butts and further alleged that respondent ignored Butts's status as a registered sex offender as early as 2012. Additionally, there were reports from AH, ZH, and another relative about Butts's sexual misconduct. Third, the fact that respondent underwent training and was approved to be an adoptive parent before her children were sexually assaulted does not diminish the fact that, once the children were in her care, she knowingly allowed a registered sex offender to live with them and spend time with them unsupervised. Respondent's status as an adoptive parent does not excuse her subsequent abusive and neglectful conduct toward her children.

Finally, respondent's speculation that the Kids Talk interview could disprove AH's claims of abuse does not negate the other credible evidence weighing in favor of termination. Both AH and ZH reported that respondent "whooped" them; according to ZH, he was even hit so hard in the face that he bled. AH also reported that she was repeatedly sexually assaulted by another child in respondent's home. AH told respondent about the sexual abuse, but respondent did nothing to stop it. ZH corroborated AH's allegations, claiming that he witnessed the abuse firsthand. Additional evidence submitted to the trial court alleged that the children "were sedated with melatonin" and that there was a lock on the family's refrigerator, suggesting severe abuse and neglect. Although respondent was appropriate during weekly visits, the children were so afraid of her that they had to be continuously coaxed into participating and even required therapeutic intervention to facilitate visits. Respondent also minimized the reasons for the court's involvement and avoided taking responsibility for her actions, choosing to blame others instead. By contrast, the children were doing well in their foster care placement and had bonded to their caregivers. Their foster parent took them to trauma-based counseling, planned to enroll them in grief counseling and obtain individual education plans (IEPs) to address their academic and mental-health needs, and was willing to adopt them. Accordingly, regardless of what additional evidence

---

[1] Respondent relatedly claims that the trial court denied her the opportunity to adjourn the proceedings to admit the interview, but respondent never actually requested an adjournment; she merely claimed that the case was not "complete" without it and requested that the trial court impose a service plan in lieu of termination. We decline to fault the trial court for not affording respondent an adjournment she never sought.

*may* have shown, there is no error warranting reversal because the trial court's findings were sufficiently supported by the record.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense